AMERICAN MORTG. CO. OF SCOTLAND, Limited, v. HOPPER et al.

(Circuit Court, D. Oregon. May 20, 1893.)

No. 1,916.

1. PUBLIC LANDS—PRE-EMPTION—CANCELLATION OF CERTIFICATES.

The certificate of payment issued to a pre-emptor of public lands may be canceled by the proper officers of the land office when it is found that his entry was made for the benefit of a third person, and was hence fraudulent and void, under Rev. St. § 2262. Smith v. Ewing, 23 Fed. Rep. 741, and Wilson v. Fine, 40 Fed. Rep. 52, disapproved. U. S. v. Steenerson, 50 Fed. Rep. 504, followed.

2. SAME—BONA FIDE PURCHASERS.

The interest vested in a pre-emptor who has made his payment and received the certificate is merely an equitable one, and a purchaser from him before a patent issues cannot claim to be protected as a bona fide purchaser from cancellation of the certificate, on the ground that it is fraudulent and void under Rev. St. § 2262. U. S. v. California & O. Land Co., 13 Sup. Ct. Rep. 458, distinguished.

In Equity. Suit by the American Mortgage Company, Limited, of Scotland, against Thomas R. Hopper and others, to recover land. Bill dismissed.

Zera Snow, for plaintiff.
Raleigh Stott, for defendants.

BELLINGER, District Judge. This is a suit to have the defendant Thomas R. Hopper decreed to hold the legal title to the S. W. ¼ of section 4, township 2 N., of range 31 E. of the Willamette meridian, acquired by him under a patent from the United States, in trust for the plaintiff, and to compel said defendant to convey such title to the plaintiff, and to surrender to it the possession of the said premises. The plaintiff's claim is through a pre-emption entry by one George Waddel, while the defendant claims under a homestead title. The facts in the case are stipulated and are as follows:

On October 10, 1882, George Waddel made a final cash entry under the pre-emption laws of the United States of the land in dispute. He paid thereon $400, and received a duplicate receiver's receipt therefor. On the following day (October 11th) this receipt was duly recorded in the records of deeds of Umatilla county. On May 5, 1885, the defendant Thomas R. Hopper made application in the local land office to enter the same land under the home-

stead laws of the United States, and filed a contest against the entry of Waddel. Thereupon, on November 30, 1885, Waddel's entry was canceled in the local office, and thereafter such cancellation was approved by the commissioner of the general land office, and the defendant Hopper was permitted to make his homestead entry, which he did. In the regular course of proceedings had under this homestead entry, a patent was issued to the defendant Hopper for the land on June 12, 1891, which patent was duly recorded in the proper records of Umatilla county on the 4th day of the following August. The money paid by Waddel is still retained by the government. The cancellation of Waddel's entry was on the ground that it was fraudulently made for the benefit of another person.

On the 11th day of October, 1882, before the cancellation of Waddel's entry, he executed his mortgage upon the land in question to the Oregon & Washington Mortgage Savings Bank of Oregon for $850. In making this loan the savings bank acted as the agent of the complainant, to which it duly assigned the Waddel mortgage and note on October 25, 1882. The mortgage and assignment were both duly recorded on the respective dates of their execution. On September 10, 1885, the complainant brought suit against Waddel and his successors in interest to foreclose this mortgage. A decree of foreclosure was had on February 13, 1886, and on the 1st of May following the property was sold under this foreclosure to the complainant for $1,250. The sale was confirmed on May 11th, and on October 24, 1887, the sheriff executed his deed to the complainant, which was then recorded. Neither the savings bank nor the complainant was made a party in the defendant's proceedings to contest the Waddel entry, and neither had actual knowledge of any failure by Waddel to comply with the laws of the United States under which the entry was made, nor was the defendant a party in the foreclosure suit, although he was in possession of the premises at the time.

The plaintiff bases its claim for relief upon the ground that when Waddel paid the money under his entry, and received the receiver's receipt, he acquired a vested right or interest that could not be affected by the subsequent action of the land office in canceling such entry; that, in fact, the title became vested in him, and can only be divested by judicial decree; that the right to cancel the entry and certificate of its grantor involves the power to declare a forfeiture under section 2262 of the Revised Statutes, which can only be worked by judicial process. The plaintiff concedes that, notwithstanding the rule, as thus claimed by it, this court would not grant relief to an entryman who had in fact been guilty of acts constituting a ground of forfeiture in a proper proceeding, and as to this feature of the case it contends that the burden is upon the defendant to prove such acts; that the receipt of the register and receiver to Waddel makes a prima facie case in his favor upon the equities; and, finally, that if the register and receiver had authority to cancel Waddel's entry, the plaintiff stands in the relation of a bona fide purchaser for a val-

uable consideration, and is entitled on that ground to the relief prayed for.

In Smith v. Ewing, 23 Fed. Rep. 741, this court held that a certificate of purchase in favor of a pre-emptor cannot be canceled by the land department for alleged fraud in obtaining it, but that in such case the government must seek redress in the courts, where the matter may be judicially determined; and that a purchaser in good faith and for a valuable consideration takes the land purged of any fraud that might have been committed in obtaining such certificate. This case is followed by this court in Wilson v. Fine, 40 Fed. Rep. 52. The case of Brill v. Stiles, 35 Ill. 309, adopts the same view, following earlier decisions of that court. The cases of Smith v. Ewing and Wilson v. Fine are claimed by the plaintiff to establish a rule of decision which, under the doctrine of stare decisis, this court should not depart from. The cases cited in Smith v. Ewing in support of the doctrine laid down therein are, with some exceptions, cited by plaintiff in the case on trial. These cases, with others to the same effect, were relied upon in support of the same view in the case of U. S. v. Steenerson, in the circuit court of appeals for the eighth circuit, (50 Fed. Rep. 504,) the most recent case involving this subject. In this case the court, referring to these authorities, says:

"The principles on which these decisions are based is that when a homesteader or pre-emptor has, in good faith, performed all the acts which, under the provisions of the statutes of the United States, are necessary to complete his right to the land, then he becomes equitably the owner of the same, and the United States holds the naked legal title as a trustee for his benefit. For the protection of rights thus acquired it is held that in a contest involving the title of the land an established right to a patent will be deemed the equivalent of a patent. This rule, however, has been adopted solely as a means for the protection of those who have, in good faith, established a right to a patent by performance of the requisite conditions. The final certificate or receipt acknowledging payment in full, and signed by the officers of the local land office. is not, in terms, nor in legal effect, a conveyance of the land. It is merely evidence on behalf of the party to whom it is issued. In a contest involving the title to land, wherein a person claims adversely to the United States, it is open to such claimant, notwithstanding the legal title remains in the United States, to prove that by performance on his part of the requisite acts he has become the equitable owner of the land, and that the United States holds the legal title in trust for him; but, as the claimant in such case has not received a patent or formal conveyance, and has not become possessed of the legal title, he is required to show performance on his part of the acts which, when done, entitle him, under the law, to demand a patent of the land. When evidence of this kind is offered on behalf of the claimant it is open to the United States to meet it by proof of any fact or facts which, if established, will show that the claimant has not become the real owner of the realty. If it be true, in a given case, that the entry of the land was not made in good faith, but in fraud of the law, certainly it cannot be said that the claimant has become the equitable owner of the land, and that the United States is merely a trustee holding the legal title for his benefit. Fraud vitiates any transaction based thereon, and will destroy any asserted title to property, no matter in what form the evidence of such title may exist. The Amistad, 15 Pet. 518; League v. De Young, 11 How. 185."

This decision by the circuit court of appeals of the eighth circuit is an authoritative interpretation of the cases cited in sup-

port of Smith v. Ewing, and of the law applicable in the case on trial. Those cases do not question the right of the land department to cancel a receipt fraudulently obtained. On the contrary, they expressly or impliedly recognize such right. Thus, in Simmons v. Wagner, 101 U. S. 260, it is held that when lands have been once sold, they are no longer subject to entry; that "a subsequent sale and grant of the same land to another person would be absolutely null and void so long as the first sale continued in force;" and the decision is that, "where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued." The court cite Wirth v. Branson, 98 U. S. 118, one of the cases relied upon by plaintiff here, where the rule is stated to be "that, where public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location;" that the public faith has become pledged to such person, and that "any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside."

In Johnson v. Towsley, 13 Wall. 72, the court, speaking of a case where the register and receiver hear the application of a party to enter land, decide in his favor, receive his money, and give him a certificate, says:

"Undoubtedly this constitutes a vested right, and it can only be divested according to law. In every such case, where the land office afterwards sets aside this certificate and grants the land thus sold to another person, it is of the essence of judicial authority to inquire whether this has been done in violation of law, and, if it has, to give appropriate remedy."

This language is urged upon the attention of this court in support of plaintiff's contention. The point involved in that case was as to the finality of the action of the secretary of the interior on appeal in issuing a second patent to a contesting pre-emptor. The complainant maintained the authority of the courts to determine the question as to who was rightfully entitled to the land, or as to which patent should prevail. The register and receiver had decided in favor of the complainant upon a contest with the person who subsequently obtained a second patent. This decision was affirmed by the commissioner of the general land office, and a patent was issued to the complainant. Upon appeal to the secretary of the interior the action of the land office was reversed, and a second patent issued to the contestant. The decision of the secretary of the interior, adverse to the complainant, was on the ground that previous to the filing by him upon the land in question he had filed upon other lands, which had not yet been offered at public sale, and thus rendered subject to private entry. There was no question as to the jurisdiction of the secretary of the interior to hear and determine the appeal taken. The objection was, not that he had acted without jurisdiction, but that in the exercise of jurisdiction he made an errone-

ous decision. The court ruled in Towsley's favor upon the holding that his previous filing did not, under the circumstances, preclude him in his right as the first entryman of the land in dispute. The decision was based upon his right, independent of his certificate, upon the fact that, as a matter of law, he was qualified to make the entry, whereas the secretary had wrongfully held that he was not so entitled.

The case of Myers v. Croft, 13 Wall. 291, cited by plaintiff, is to the effect that a pre-emptor, who has entered land and who at the time is owner in good faith, and has done nothing inconsistent with the provisions of the law on the subject, may sell, even though he has not yet obtained a patent. In other words, it is held that the man having a right to a patent may sell that right. So far from supporting plaintiff's contention that compliance with the pre-emption formula establishes the right, the case requires that the pre-emptor shall have acted in good faith, and done nothing inconsistent with law. The opinion states that "the object of congress was attained when the pre-emptor went, with clean hands, to the land office, and proved up his right, and paid the government for his land."

The Yosemite Valley Case, 15 Wall. 77, cited by plaintiff, is to the effect that when the settler has complied with the prerequisites prescribed by congress, he acquires a vested interest; and that he is then entitled to a certificate, and ultimately to a patent. In this, as in the other cases, it is the compliance with the law, and not the possession of the certificate, that gives the right.

In Moore v. Robbins, 96 U. S. 538, cited by complainant, the court says that after the patent has been signed, sealed, and delivered the power of the land department ceases, and then courts of equity will not grant relief unless there has been fraud or mistake or misconstruction of the law in the case. The action of the proper officers of the land department in the decisions of all questions of fact is not subject to review by the courts. In Quinby v. Conlan, 104 U. S. 420, 426, the court said:

"It would lead to endless litigation, and be fruitful of evil, if a supervisory power were vested in the courts over the action of the numerous officers of the land department on mere questions of fact presented for their determination. It is only where those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentation and fraud have been practiced, necessarily affecting their judgment, that the court can, in a proper proceeding, interfere, and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled."

Again, in Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. Rep. 389, the court, reasserting this doctrine, declares that it has so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of the public lands, that it creates an unpleasant surprise to find

that counsel, in discussing the effect to be given to the action of that department, overlook these decisions on the subject. The case of Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. Rep. 249, is to the same effect. The question is carefully considered in Smith v. Custer, by Secretary of the Interior Vilas, 8 Dec. Dep. Int. 269, the secretary maintaining the authority of the department to cancel entries as the exercise of a jurisdiction that has been continuously exercised for more than half a century, recognized by congress, and its rightful existence abundantly adjudged by the supreme court of the United States. In Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. Rep. 782, it is held that to charge the holder of the legal title to land under a patent it must appear that, by the law properly adminis-- tered in the land department, the title should have been awarded to the latter. It is not enough to show that there was error in ad· judging the title to the patentee.

The case of Cornelius v. Kessel, 58 Wis. 238, 16 N. W. Rep. 550, is cited by plaintiff. This case was appealed to the supreme court of the United States, where the judgment was affirmed. 128 U. S. 456, 9 Sup. Ct. Rep. 122. The right of the first entryman was upheld, upon the ground that he was entitled to the land upon the fact of compliance with the law. The fact of a certificate was not decisive of the case. The land office had canceled the first entry because it included with the land in dispute a second tract which did not belong to the United States, and was not subject to its disposal. The court held that such cancellation was unlawful; that it did not lie with the land department to oppose the entryman's completion of his title to the tract which was subject to entry. In this case the certificate is canceled upon a ground that is lawful. It is conceded that Waddel could not lawfully acquire the land in question for the benefit of another person. This cancellation was, therefore, upon a lawful ground,—upon the ground that Waddel's entry was unlawfully made,—and so the question is, can the land department cancel a certificate once issued in any case? If not, then the authority of that department culminates in the issue of the receiver's receipt which necessarily becomes as conclusive an evidence of title as the law can provide.

The complainant's position is this: It relies upon the land-office receipt of its grantor, Waddel, as equivalent to a patent, and contends that when such grantor made his payment and received this receipt the land was no longer the property of the United States, but was absolutely vested in him; that this vested title could only be divested according to law, and that his certificate could no more be canceled by the United States than a patent. Nevertheless it confesses by its bill and prayer for relief that the title was not vested in such grantor, but is in fact in another,—in the patentee,—whom it seeks to charge as trustee for its benefit. It admits that to entitle it to this relief it must show that it is equitably entitled to the land, and it contends that the certificate of its grantor, Waddel, is sufficient for that purpose, unless the defendant impeaches such certificate by evidence aliunde the record of the land department canceling it. In other words, it admits

the title which the patent conveys, and at the same time seeks to substitute itself for the grantee in the patent, by means of a receiver's receipt, upon the theory that the receipt is a writing of such sanctity that, until impeached by a decree of court, it conclusively establishes the right to the land. If the receipt has this efficacy, it is, in effect, a conveyance, and the possessor of it does not improve his position by a decree such as is prayed for.

The court is asked to decree against a patentee upon a mere register's receipt, issued prior to the entry upon which the patent issued. That this cannot be done does not admit of argument. A patent is the highest evidence of title, and is conclusive as against the government, until it is annulled or set aside by some judicial tribunal. U. S. v. Stone, 2 Wall. 525. The title passes in every instance where, under the decisions of the officers having authority in the matter, a conveyance, generally called a "patent," has been signed by the president, and sealed and delivered to and accepted by the grantee. Moore v. Robbins, 96 U. S. 538. In Wilson v. Fine, the court quotes from the case of Cornelius v. Kessel, and says that "the general drift of the opinion is to limit and restrain the power of the commissioner of the general land office to set aside or cancel entries of certificates allowed by the register and receiver;" but the fact is that the court in that case expressly recognized the power of the commissioner to correct and annul entries in proper cases, subject only to the restriction that this is not an unlimited or arbitrary power. It is declared that the exercise of this power is necessary to the due administration of the land department; that, if an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department; that the commissioner is authorized to correct and annul entries of land allowed by the register and receiver, when the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. It is a singular fact that this decision, in which it is laid down that the land department has the power to cancel certificates of entry where, among other cases, the parties have previously entered all that the law permits, is cited in Wilson v. Fine in denial of the right of the register and receiver at Lakeview to cancel a homesteader's entry on that identical ground. In Wilson v. Fine the plaintiff's right depended upon a homestead certificate which had been canceled upon a contest on the ground that the homesteader had previously exhausted his homestead right. The decision assumes that such was the fact, and holds that when the certificate was issued to Alexander, Wilson's grantor, the land became the property of Alexander. The case therefore decides that the mere certificate conveyed the title, although the holder of it was not equitably entitled to the land, and had procured the certificate through fraud and perjury. Notwithstanding the veneration in which I hold the memory of the learned judge who decided the cases of Smith v. Ewing and Wilson v. Fine, and my own connection with the latter

case, I must yield to the great weight of authority which is the other way, and which is supported by the better reason. The case of Wilson v. Fine was brought and submitted solely upon the authority of Smith v. Ewing, and without the examination of other cases.

The rule of stare decisis is more properly applied in courts of last resort, where decision is final, and uniformity is practicable. It was held in the case of The Madrid, 40 Fed. Rep. 677, the late Mr. Justice Lamar delivering the opinion, that the decisions of the circuit courts of the United States, not being uniform in the particular case, it could not be said that any of them had become a rule of property within the principle of the doctrine of stare decisis. There is no room for the application of such doctrine with respect to the two cases in question. It is indispensable that this court shall decide according to the established doctrine of the courts of the United States, and without reference to any erroneous ruling it may have already made.

It is argued further, on the part of plaintiff, that the cancellation of the Waddel receipt operates as a forfeiture of an estate or interest in the land in question, under section 2262, and is therefore the exercise of a power not possessed by the land department. This is, in effect, the same question already considered. Section 2262, among other matters, provides that, "if any person taking such oath swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all right and title to the same." The forfeiture mentioned here is a forfeiture of the money paid by the entryman. Whether the government has a right to thus forfeit this money need not be considered here. There is no such thing as a forfeiture of the land, since the title does not vest until the final action of the land department determines the existence of the conditions necessary to that result. There is no such thing as a forfeiture of an equitable estate or interest, since, as has been abundantly shown, it does not appear that the original entryman was ever invested with any such estate or interest. The alleged forfeiture is merely the exercise of an undoubted authority by the proper officers of the land department to cancel an entry made upon false testimony,—an authority so exclusive in such department that what is done under it in the decision of questions of fact cannot be questioned anywhere else, unless such tribunal has been prevented by some fraud practiced from fairly trying the question.

The next point to be considered is that of bona fide purchaser for a valuable consideration. Does the plaintiff occupy the position of such a purchaser? The statute provides that all grants or conveyances by an entryman who has sworn falsely in respect to the matters enumerated, except in the hands of bona fide purchasers for a valuable consideration, shall be null and void. The protection of a bona fide purchaser relates to the legal title, or at least to such a right as is completely determined. So long as something remains to be done affecting the right, those purchasing it do so at their peril. As is stated in Smith v. Custer, supra:

"The pre-emption purchaser takes by his final proofs and payment and his certificate of purchase only a right to a patent for the public lands in case the facts shall be found by the general land office, and the interior department upon appeal, to warrant the issuance of it. Whatever claim to patent he possesses by virtue of his payment and certificate is dependent upon the further action of the department, and its future finding of the existence of the conditions, and his compliance in fact with the prerequisites prescribed by law to the rightful acquisition of the public lands he claims. This being so, it is plain that the purchaser can acquire from the entryman no greater estate or right than the entryman possesses."

Thus, in the present case, when the plaintiff, by its agent, took its mortgage upon this land, it did so with knowledge of the fact that Waddel's title or right was subject to the further action of the land department. It took its chances as to this, and cannot now complain that such action affected its security unfavorably. The doctrine of bona fide purchaser is a matter of conscience. If the purchaser has acted with common honesty and prudence, he is entitled to protection, but not otherwise. The Military Wagon Road Cases, begun in this court, and recently decided in the supreme court of the United States, (U. S. v. California & O. Land Co., 13 Sup. Ct. Rep. 458, and U. S. v. Dalles Military Road Co., 13 Sup. Ct. Rep. 465,) are cited to show that a purchaser of public lands may be a bona fide purchaser, although patent has not yet issued. These were land grant cases. Congress, by a grant, conveyed these lands to the state of Oregon, to be used in constructing military wagon roads. The granting act constituted the governor of Oregon a special tribunal to determine when the roads should be completed according to the requirements of the grant, and it provided that, when the roads were shown by the certificate of the governor of Oregon to have been completed, patents should issue. Before the purchases relied upon in those cases were made, the purchasers employed capable lawyers, and had a careful examination made of the state of the title. The governor of the state had certified the completion of the roads in accordance with the requirements of the act. The purchasers had good right to rely upon these certificates. The supreme court, in its decision, says: "It is familiar law that, when jurisdiction is delegated to any officer or tribunal, his or its determination is conclusive;" that the purchasers knew that such determination was committed by the statute to the governor of the state, and they saw his adjudication upon the question, and were not derelict in relying upon it. Nothing can be plainer. But suppose these purchases had been made before the governor had finally passed upon the fact of the seasonable construction of the roads, and the right of the grantees under the act, and the governor had subsequently decided against such construction, in that case their position would have been similar to that of the plaintiff in this case. True, the plaintiff relied upon the register's receipt, but, as shown, this was not a finality, and the plaintiff knew it, or at least should have known it. The doctrine of bona fide purchaser is not applied to protect an equity, but to protect the legal title against a prior equity, by uniting with such legal title an equity arising from the payment of money.

and securing the conveyance without notice, and a clear conscience. Boone v. Chiles, 10 Pet. 211. The authorities are all to the effect that the protection of a bona fide purchaser does not extend to the purchase of equitable interests. The purchasers under preemption certificates are within this class. It is held that such protection does not extend to them. Root v. Shields, 1 Woolw. 211; Randall v. Edert, 7 Minn. 450, (Gil. 359;) Shoufe v. Griffiths, (Wash.) 30 Pac. Rep. 93; U. S. v. Johnson, 5 Dec. Dep. Int. 442. The good faith of the purchaser cannot create a title where none exists. Dodge v. Briggs, 27 Fed. Rep. 160.

The plaintiff's bill of complaint must be dismissed, with costs, and it is so ordered.