## FARMERS' NATIONAL BANK OF PONCA CITY v. CRAVENS, Adm'x.

No. 11468—Opinion Filed June 19, 1923.

**1. Executors and Administrators—Sales— Authority of Court.**

An administrator has no power or authority to sell the property of an estate of a decedent without an order of the county court, and title does not pass until the sale is confirmed by said court. (Section 6361. Rev. Laws 1910, section 1257 Comp. Stats. 1921.)

**2. Pledges—Subsequent Delivery.**

When property is pledged, the delivery may not be made contemporaneously with the pledge, and if made thereafter. it relates back to the date when the contract or pledge was made. (R. C. L. 21, secs. 11-644.)

**3. Executors and Administrators — Claims Against Estate—Rights of Pledgee After Loss of Collateral Through Its Fault.**

A pledgee who sells the property of an estate of a decedent, held as collateral to

secure the payment of indebtedness against the estate on credit, and fails to collect his purchase price, cannot collect his debt from the estate, or so much thereof as is equal to the reasonable value of the property sold. (Jones on Collateral Security [Pledge] 3rd Ed. sec. 682.)

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kay County; John L. Norman, Judge.

Action by the Farmers' National Bank of Ponca City against Lizzie Cravens, administratrix. Judgment for defendant, and plaintiff brings error. Affirmed.

J. E. Burns and Embry, Johnson & Tolbert, for plaintiff in error.

J. F. King, for defendant in error.

Opinion by JONES, C. This case was instituted in the district court of Kay county, by Farmers' National Bank of Ponca City, plaintiff in error, and plaintiff in the court below, against Lizzie Cravens, administratrix of the estate of Wm. Cravens, deceased, defendant in error. and defendant in the court below, on October 30, 1919. Judgment was rendered in favor of defendant, from which judgment the plaintiff in error appeals.

The petition of plaintiff was to recover from defendant, as administratrix of the estate of her deceased husband, the sum of $4,086.95, with interest from May 11, 1918, at 10 per cent. per annum, and attorney's fees, based on two notes, one of which was given on the 10th day of April, 1917, by Wm. Cravens, for the sum of $902.60 due 30 days from date, and is an ordinary promissory note, such as is usually used in banking institutions. And on the 10th day of November, 1917, said Wm. Cravens executed his note for the sum of $4,127.85, due on demand, which bears credit of $1,117.55, leaving a balance due on said note at the time of the institution of this suit of $3,010.30. This note is not an ordinary promissory note. and as we think its provisions have a very material bearing upon the issue in this case, we here recite same in full:

"$3,010.50, face. On demand, after due, I promise to pay to the Farmers' National Bank of Ponca City, or order, at its office in Ponca City; Oklahoma, $4,127.85.

"For value received, with interest from maturity, at the rate of 10 per cent. per annum, until paid and 10 per cent. on the amount due as attorney's fee, should legal process become necessary to collect this note,

or if placed in the hands of an attorney for collection after maturity, and having deposited with said bank as collateral security (being the legal holder) for the payment thereof, and also for all other present or future demands or claims of any kind, of the said bank against the undersigned, due or not due.

"Four Hollier Autos as follows, Model 196, No. 6584, $6,591; Model 186, No. 6579 and Model 186 D 6611 One Chummy Roadster.

"Which the maker and indorsers hereof hereby authorize said bank, or its president or cashier, to sell, without notice, at public or private sale, at option of said bank, or its assigns (and with the right of said bank or its assigns to be the purchaser of all or any part of said collateral at any such sale), in case of nonperformance of this promise, applying the net proceeds to the payment of this note, including interest, and accounting for the surplus, if any, and in case of deficiency, promise to pay said bank, or its order, the amount thereof forthwith after such sale, with interest as provided above; and in case of any exchange of, or additions to, the collaterals above named, the provisions of this note shall extend to such new or additional collaterals, the margin of collaterals to be kept satisfactory to said bank, or in default thereof, this note to become due and payable. We, the makers, indorsers, assigns and sureties, severally waive presentment for payment, demand. protest and notice of protest of nonpayment of this note."

"William Cravens."

Plaintiff alleges in its petition that said notes and claim based thereon were duly presented to Lizzie Cravens, defendant herein, administratrix of Wm. Cravens, deceased, and that she neglected and refused to allow or disallow said claim for a period for more than ten days from its presentation, and that same, at the time of the institution of this suit, stands rejected.

The defendant, Lizzie Cravens, as administratrix under the will of Wm. Cravens, deceased, in her answer and cross-petition admits the facts as alleged by plaintiff, but denies any liability on the part of the estate of Wm. Cravens, deceased: admits the execution of the notes as pleaded, and further avers that on the 14th day of November, 1917, said Wm. Cravens died, and that thereafter she was duly appointed administratrix of the estate, and has ever since acted in that capacity, and that on or about the 1st day of March, 1918, the plaintiff bank, by its cashier, took possession of the five automobiles mentioned in the note and pledge heretofore referred to; that said cars were new cars and were of the value of not less

than $4,500 at said time, and that the plaintiff, through its cashier, sold and delivered said cars to one Jones, as the agent and representative of an automobile concern of Oklahoma City, which was insolvent, irresponsible, and fraudulent; that said sale was not for a fair and reasonable market value, and that said cars have been removed to some place unknown, and are beyond the control of the defendant at this time; and further alleges that she, as the administratrix of said estate, should have judgment against the plaintiff bank for the sum of $587.15, the difference in the value of said automobiles and the amount of the indebtedness then existing. To which answer and cross-petition the plaintiff bank replied, and denied that it took charge of, and sold the automobiles in question, as charged by the plaintiff, but alleged that the said Lizzie Cravens made and negotiated said sale.

There is a conflict of evidence on some of the issues raised by the pleadings, but the evidence clearly discloses that the plaintiff bank held the notes and pledge in question, and that the defendant, as administratrix of the estate of Wm. Cravens, deceased, was making some effort to arrange for the payment of said indebtedness, and had made an effort to secure a purchaser or buyer for the automobiles in question, and on or about the 1st day of March, 1918, one Jones, as the representative of an auto clearing house, located in Oklahoma City, called on Lizzie Cravens, the defendant, for the purpose of buying said automobiles and desired to look at same. Mrs. Cravens showed him a portion of the cars and assured him that the other was of the same kind and character; whereupon he offered her $4,250 for the five cars. The evidence is undisputed that Mrs. Cravens said to Jones that he would have to take the matter up with the bank, plaintiff herein, and, in company with Jones, went to the bank where she introduced him to the officers of said bank, and informed them of his mission, and after some brief negotiations the deal was closed, and in view of the fact that said Jones asked the bank, plaintiff herein, for an extension of credit of 60 days, in which to pay the purchase price of said cars, the bank, through one of its officers, called up a banking institution in Oklahoma City, which the said Jones had given as reference, and inquired of one of the officers of the Oklahoma City bank as to the solvency and reliability of said Jones and his associates, engaged in the auto clearing business, and having received a favorable reply from the Oklahoma City bank, it accepted the offer of said Jones of $4,250 and extended credit, and had him to execute the note to which he signed the signature of the auto clearing house, and that E. Guy Edwards and T. M. Edwards, managing officers of said concern, whereupon the cars in question were taken in charge by the said Jones, who removed same to Oklahoma City. The note referred to, and executed by the said Jones, was made payable to and in favor of the bank, plaintiff herein, due 60 days from date. On or about the due date of said note notice was given to the payor, which was unheeded, and thereafter the plaintiff bank continued to make an effort to collect same, placing the note in question in the hands of a firm of attorneys in Oklahoma City, who, after some investigation, reported to the plaintiff herein that the makers of said note were insolvent, wholly worthless, and that the auto clearing house had gone out of business, and that they were unable to locate any assets belonging to said institution, or either of the makers of said note.

The plaintiff bank contends that it did not accept said cars and make the sale to Jones under the terms of the pledge, which authorized it to take charge of and sell said property, either at private or public sale, but that the sale was made and negotiated by Lizzie Cravens and for her benefits, and that of the estate of Wm. Cravens, deceased, and that the cars were the property of Lizzie Cravens, and that she held same and negotiated the sale in question in her individual capacity and not as administratrix of the estate of Wm. Cravens, deceased, and cites as a foundation or basis for this statement and conclusion, the fact that the said Lizzie Cravens, as the administratrix of the estate, in filing an inventory of the property belonging to said estate, did not include the automobile in question. But we do not regard this as evidence of ownership on the part of anyone, and from a careful examination of the testimony of the witnesses offered in evidence, we are unable to find any evidence from which it could be inferred that there was any question as to ownership of said property not being in Wm. Cravens, deceased, at the time of his death, and there is no pleading upon which any such contention might be based, and we think that the same is unworthy of serious consideration. The property, under the facts as disclosed by the record in the case, unquestionably was that of the estate of Wm. Cravens, deceased.

Plaintiff in error, however, contends that in either event, whether the property was sold by Lizzie Cravens in her capacity as administratrix of the estate, or in her individual capacity, the plaintiff herein is not bound by her actions in said matters, and is

entitled to recover the amount sued for against the estate, and makes a very extensive argument, cites numerous authorities in support of its contention, and in its argument presented in its brief, says:

"Plaintiff is entitled to recover on its notes and is neither required to plead nor to prove the transaction of sale to the clearing house; but if these cars then belong to the estate, defendant, for her defense, was put to show that she, though present, assented to a transaction in violation of law and her, official duty—she cannot so stultify herself in defense of her action; but she must abide by the action as though lawful, and answer to the county court for any neglect of duty, or misapplication of the property of the estate."

This argument is based on the law and is a sound doctrine, but, in our judgment, it applies with equal force and possibly with greater force, in this instance, to the plaintiff in error, than to the defendant in error. Regardless of the conflict of evidence on some points in this case, the evidence unquestionably shows that the plaintiff bank, through its officers, was present, and giving the evidence the most favorable construction possible, assisted in the negotiation which led up to the sale of the cars, with a full knowledge of their rights and of all the facts surrounding the matters in controversy. It agreed to the price, voluntarily assumed the responsibility in calling up the banking institution in Oklahoma City for the purpose of determining the solvency or insolvency, or responsibility, of the party to whom the sale was to be made, and satisfied itself (not Mrs. Cravens), of the solvency and reliability of the purchaser; attended to the preparation of the note, and agreed with the party Jones, as the representative of the clearing house, as to the terms of same, and of its own volition extended a credit of 60 days, and took said note direct to the bank and not to Lizzie Cravens, without consulting Mrs. Cravens, and also took 42 shares of the stock of said company as additional collateral. These facts would indicate that the defendant's position, to the effect that the plaintiff bank made the sale under the terms of the pledge and for its own benefit, was correct, and is strong corroboration of defendant's testimony. No contention is made that there was any specific agreement or anything said by either of the parties as to who was making the sale, whether the bank or Mrs. Cravens, but we think the evidence was sufficient to justify the jury in finding for the defendant, and against the plaintiff, on the theory submitted to them by the court, to wit: "That if the plaintiff bank sold said automo-

biles under the terms of their pledge and by virtue of the authority therein given, that they would not be entitled to recover." And we think this was a correct application of the law to the facts in the case, as is thoroughly established by the following authorities:

In 11 C. J., page 710, under the head of Chattel Mortgages, section 514, it is said:

"A power of sale is ordinarily held to confer no right to barter or exchange the property for anything other than money, except, perhaps, where the goods bartered for are taken in at a cash valuation and credited on the debt. Further, the sale is ordinarily required to be for cash and not for credit. But while it may be conceded that it is the duty of the mortgagee to sell for cash, the only penalty for a breach of the duty is to hold him responsible for the damages caused thereby—" citing many authorities.

"The mortgagee is strictly accountable for the proceeds of the sale, and an action will lie to compel him to render an account." Id., 715.

"Where a valid and legal sale of a property is made by the pledgee, he is accountable to the pledgor for the proceeds of such sale." 22 Am. & Eng. Ency. Law, p. 893 (2nd Ed.)

"While as a general rule the pledgee in a suit on the principal obligation, is not bound to account for collateral pledged to him as security, yet if it is alleged by the defendant that he has realized on such collateral, or has lost or misappropriated it, the pledgee must account for the same, and a failure or refusal to do so will operate as a bar to the recovery of the debt itself." 31 Cyc. 869, "Pledges."

"A wrongful sale of the pledged property, before default, or without demand or notice, or otherwise in violation of the rights of the pledgor, so that the property is placed beyond the control of the pledgee, constitutes a conversion of the property, for which the pledgee is liable to the pledgor." 31 Cyc. 880.

"Where the pledgee has sold or transferred the collateral, he cannot recover on the debt without accounting for the collateral. A creditor who has sold or transferred the collateral paper cannot recover upon the principal debt without accounting either for its face value or its actual value. By such sale or transfer he has made the collateral his own, and extinguished the principal debt, at least to the extent either of the normal amount of the collateral or of its value." Jones on Collateral Securities (Pledges) (3rd Ed.) sec. 682.

It is true that the plaintiff bank contends that the contract of pledge was never

perfected, in that it never took actual possession of the automobiles mentioned in said note and pledge. The facts, as disclosed by the evidence on this point, are to the effect that at the time of the death of Wm. Cravens, the cars were stored in a building belonging to said Cravens, and subsequent to his death his widow removed said cars and stored three of them in one garage and one each in two other garages in Ponca City, for the reason that she had an opportunity to rent the building in which they were stored at the time of the death of her husband. No one exercised any authority or control over the cars further than heretofore stated, and just what arrangements may have been made at the time of the execution of the notes and pledge is not disclosed by the evidence in this case. But it is evident from all the facts and circumstances that Mrs. Cravens was at no time in an attitude of taking any adverse position as against the bank, as to its rights under the pledge, and evidently recognized the contract or pledge as a valid subsisting contract. And, so far as we can determine from the facts as disclosed by the evidence, the bank could have taken charge of the cars at any time. The actual delivery of property, such as automobiles, when deposited as a pledge, is material under the law. But delivery contemporaneously with the execution of the pledge is not necessary.

"Where property is pledged, the delivery may not be made contemporaneously with the pledge, and if made thereafter, it relates back to the date when the contract or pledge was made." See R. C. L., vol. 21, sec. 11, page 644.

And while the evidence, as heretofore stated, does not disclose the facts as to what was done toward the delivery of the property pledged to the plaintiff bank, we think it clearly shows that it did take charge and exercise control and dominion over the same at the time it negotiated the deal with Mr. Jones, and took his note for same to the plaintiff bank, and permitted him to take the cars.

So far as the facts established by the evidence show there seems to have been no reason why the plaintiff could not have taken actual possession of the cars at any time for the purpose of holding them as a pledge under the terms of the contract, if in fact it did not take possession.

Mrs. Cravens, the defendant, evidently did not regard the automobiles in question as the property of the estate, and in the same light that she regarded the balance of the property belonging to said estate, not listing same in the inventory, and there is no proof made which will justify the contention of the plaintiff that she sold and disposed of the property in violation of law, and in violation of her duty as administratrix, as is provided in section 6301, Rev. Laws 1910, being section 1257 of the Comp. Stats. 1921, which is as follows:

"No sale of any property of an estate of a decedent is valid unless made under order of the county court, except as otherwise hereinafter provided. All sales must be reported under oath, and confirmed by the county court, before the title to the property sold passes—"

Numerous authorities are cited, among which we find the case of Jones v. Wheeler et al., 23 Okla. 771, 101 Pac. 1112, wherein the court said:

"The executors of estates of deceased persons have no authority to sell and transfer notes belonging to the deceased, they are assets of the estate which can be sold only under and by an order of the probate court having jurisdiction of said estate."

And where the transactions between parties are subject to different constructions, one legal and the other illegal, it is the province of a court or jury, when the facts will permit and justify, to place upon the transaction that construction which conforms to the law and makes it a legal transaction. And in this case we think that the verdict of the jury and the judgment of the court based thereon are correct.

We do not feel that under the law and in good conscience, the plaintiff should be permitted to sell and dispose of the property over which it had control, and which it held as security for the payment of its indebtedness, and then because of the fact that it was unable to collect the purchase price of the same, go back upon the estate and collect the indebtedness. The judgment is therefore affirmed.

By the Court: It is so ordered.