## MERCHANTS' BANK v. PEOPLE'S SAVINGS & LOAN ASS'N et al.

### No. 913.

Circuit Court of Appeals, Tenth Circuit.

March 26, 1934.

170

Solon W. Smith, of Oklahoma City, Okl. (James S. Twyford, of Oklahoma City, Okl., on the brief), for appellant.

Howard F. Wilson, of Blackwell, Okl., for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge. ·

M. M. Estlack died on April 7, 1931, leaving Losina Katherine Estlack Saye, his only child, the sole legatee and devisee under his will. The will was admitted to probate in Kay County,- Oklahoma, and Mrs. Saye was appointed executrix on May 26, 1931, and immediately qualified. Mr. Estlack left fifty shares of the stock of the appellee building and loan association, of the value· of $5000. The certificate therefor stood in the name of the deceased.

The week after Mrs. Saye's father died, a stock salesman for the General Utilities Company commenced a campaign to get this building and loan stock in exchange for the stock of that company; he visited Mrs. Saye several times; she was satisfied with the building and loan stock which was paying satisfactory dividends; he was insistent; she knew nothing of the Utilities Company, and very little of business deals; she wanted to investigate his company; he offered to exchange the stock first and let her investigate afterward. On June 3, a week after she was appointed executrix, he overcame her resistance. She testified, without contradiction, as to the closing of the deal:

"I know I told Mr. Beggs before I had signed that over that I didn't want to do anything, until the estate was settled up, and then if I did anything, I could do it in my own name of course, but on his insistence I assigned that, and thought, well, if it was satisfactory I might go on, but it was just high pressure salesmanship, that is what it was, and I wanted time to think it over, and I told him that, and I told him if it wasn't satisfactory the deal wasn't to go through in thirty days, and in thirty days I just didn't want it."

Assured that she would be accorded thirty days in which to exercise her prerogative of changing her ·mind, she signed an order for fifty shares of seven per cent Cumulative Preferred at $100 per share, containing this clause, which apparently was intended to embody the thirty-day approval promise which finally caused her to yield to the importunities of the salesman:

"Attached is taken subject to approval of both parties in payment as follows: Issue certificate in the name of Losina Katherine Estlack Saye, Executrix."

The certificate of building and loan stock, standing in the name of M. M. Estlack, was delivered the salesman with this indorsement:

"M. M. Estlack,
"Losina Katherine Estlack Saye, Executrix."

The deal then proceeded in normal course. On June 5, as soon as the mails could carry it, the General Utilities Company offered this stock to its bank as security for a loan. The bank observed it stood in one name and was indorsed by another as executrix. No inquiry was made as to whether the court had ordered or confirmed a transfer; no inquiry made as to any conditions attached to the sale; the bank "supposed" it was all right. A transfer to the bank was written in over the signature of the executrix, and a witness to her signature obligingly supplied. Full value, it was testified, was paid out thereon in good faith. Four days later—well within the thirty days approval period—the bank presented the certificate to the Building and Loan Association for transfer and payment. The Building and Loan Association declined to transfer it, because Mrs. Saye had notified them not to, and because there was no order of the probate court directing the transfer.

The General Utilities Company went into the hands of a receiver in July, was adjudicated a bankrupt the following February, and all its property sold for $450,000. Its indebtedness was more than a million dollars. Currin v. Nourse (C. C. A. 8) 66 F.(2d) 137. The stock is worse than worthless, and undoubtedly was when it was sold. The trial court found that the bank, transacting much business for the company, knew enough of its condition to surmise at least that it was in desperate financial straits when it acquired this building and loan stock from an estate in Oklahoma without any inquiry as to whether the court had directed the sale. As we view the case, we need not examine the record critically to ascertain whether there are circumstances enough to find that as a fact which our common sense tells us must be true.

The bank brought this action to compel the Building and Loan Association to transfer the stock and to pay out on it, asserting that it is a bona fide holder of the legal title to an instrument which has certain attributes

of negotiability. Fidelity Nat. Bank & Trust Co. v. McNeal (C. C. A. 10) 67 F.(2d) 516. The Building and Loan Association denied the legality of a transfer by an executrix without court order; alleged that the estate of M. M. Estlack asserted its ownership of the stock; offered to abide the order of the court in the premises. Upon the bank's application, Mrs. Saye as an executrix and as an individual were joined as defendants. As an individual, Mrs. Saye disclaimed; as executrix asserted her claim to the stock. The bank, in answer, asked as alternative relief against Mrs. Saye, as an individual, judgment for $5000, on a breach of a warranty of authority. The case was tried without a jury, and judgment entered in favor of all defendants.

█ In Oklahoma the title to all personal property vests in the executor or administrator of a deceased person. O. S. 1931, § 1217. Section 1264 provides:

"No sale of any property of an estate of a decedent is valid unless made under order of the county court, except as otherwise hereinafter provided. All sales must be reported under oath, and confirmed by the county court, before the title to the property sold passes."

This case is not within any of the exceptions mentioned. By express statutory provision, therefore, the bank has no title to this stock. The Oklahoma decisions are in full accord. Jones v. Wheeler, 23 Okl. 771, 101 P. 1112; Farmers' National Bank v. Cravens, 93 Okl. 58, 219 P. 138; Warner v. Mason, 109 Okl. 13, 234 P. 747. See, generally, Bancroft's Probate Practice, vol. 2, §§ 539, 565; Western Union Telegraph Company v. Davenport, 97 U. S. 369, 24 L. Ed. 1047. When her father died, and she was appointed executrix, Mrs. Saye had no power to transfer this stock except upon the order of the probate court. There was no order, and no title passed. To hold otherwise is to ignore a valid and salutary statute, designed to protect the estates of deceased persons. Cases involving real estate, title to which vests in the estate only upon order of court, cases arising where no executor or administrator is appointed, and cases which relieve an executor of responsibility on his bond where the heirs have authorized his acts, have no bearing.

The bank then contends that, under an Oklahoma decision, Cook v. Redfield, 103 Okl. 77, 229 P. 588, a sole heir may sue in her own individual name on a note payable to the decedent, if there are no debts. From that it is argued that since at the time of the trial the known debts of the Estlack estate had been paid, Mrs. Saye, as executrix, need pay no heed to the statutes. Appellees counter with the many cases, some of which are cited above, that an executor cannot transfer title without an order of court. Whether a sole heir "in her individual name" could convey some equitable interest in property the legal title to which is in an executor, under the Oklahoma decisions, we need not stop to inquire. Mrs. Saye did not deal as an individual; she transferred the stock as executrix; the stock to be exchanged was to be issued to her as executrix; she asked the salesman to wait until the estate was closed, so she could deal "in my own name." He could not wait, for reasons that are apparent. So he dealt with her as executrix; as executrix she was powerless to pass any title.

█ It is then somewhat indefinitely suggested that if Mrs. Saye's transfer as executrix was ineffective, she is personally estopped to assert any individual right to the stock. She is not personally asserting any title to the stock in this litigation. Whatever title she may acquire will only be upon distribution of the estate. The doctrine that a title acquired by one who had theretofore attempted to convey an estate or transfer a chattel inures by estoppel to his prior grantee or purchaser, is by the great weight of authority and on principle, applicable only where the conveyance or the transfer contains an express or implied warranty of title. Gottfried v. Miller, 104 U. S. 521, 26 L. Ed. 851; Rannels v. Rowe (C. C. A. 8) 145 F. 296; Curran v. Burdsall (D. C. Ill.) 20 F. 835; Faulks v. Kamp (C. C. N. Y.) 3 F. 898; Brinkman v. Rick (Tex. Civ. App.) 19 S.W.(2d) 808; Johnson v. Brauch, 9 S. D. 116, 68 N. W. 173, 62 Am. St. Rep. 857; Millican v. McNeill, 102 Tex. 189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74. While ordinarily the seller of personal property impliedly warrants the title, Brinkman v. Rick, Faulks v. Kamp, supra, a personal representative has no power, in his representative capacity, to give a warranty of title. The rule of caveat emptor applies to such a sale. Ware v. Houghton, 41 Miss. 370, 93 Am. Dec. 258; Hammert v. McKnight, 132 Okl. 14, 269 P. 289, 68 A. L. R. 649. Here the transfer purported to be made by the executrix in her representative capacity. It contained no express warran-

172

ty of title and none is to be implied. The doctrine of title by estoppel is therefore inapplicable.

 There is another weakness in the bank's case, if it is to be based on estoppel rather than upon its legal ownership of the stock. The General Utilities Company could not prevail against Mrs. Saye, for any action by it would be met with the defense that the transfer was conditional upon later approval. The bank must and does claim that it has a right superior to that of the General Utilities Company, in that Mrs. Saye's defense is cut off. To do that, it must prove, in analogy to the law of negotiable instruments which it invokes, that the certificate was "complete and regular upon its face" (Uniform Neg. Inst. Law, § 58 [St. Okl. 1931, § 11357]) when it acquired it. But the face of the certificate disclosed an attempted transfer by an executrix with no showing of authority. And it has been held that, in the absence of recording laws, the doctrine of bona fide purchaser for value "protects the legal title against a prior equity" and "does not extend to the purchaser of equitable interests." Boone v. Chiles, 10 Pet. 177, 211, 9 L. Ed. 388; American Mortg. Co. v. Hopper (C. C.) 56 F. 67; German Savings & Loan Society v. De Lashmutt (C. C.) 67 F. 399.

 Nor is the bank entitled to recover on its claim for damages against Mrs. Saye personally for breach of warranty of authority. She warranted nothing to the bank, save as may be implied from signing her name as executrix. She was executrix, so that warranty was true. She did not represent to the salesman of the General Utilities Company that adequate proceedings in court had been taken to enable her to transfer the title to the stock. Nor is there any proof of reliance upon such representation, if one had been made. The bank itself made no inquiry of any kind. The stock salesman must have known that there was no order of court in the premises, for no delay intervened between her consenting and the assignment and delivery of the certificate. There was no misrepresentation, no warranty, and no reliance. There was no privity between the bank and Mrs. Saye, save for her true representation that she was the executrix; if the bank undertakes to trace its claim on this count through the General Utilities Company, its right can rise no higher than that of the company, and is nullified by the fact that the sale was subject to an approval that did not materialize.

There is no merit in appellant's case. If a bank chooses to buy stock from an estate without the slightest inquiry as to the authority of the executrix to sell, it takes its chances. Mrs. Saye cannot be held personally unless she was at fault; she was badgered by an importunate stock salesman until she assigned this stock without authority, but she protected herself in part by exacting an agreement that the sale was subject to her later approval, and took time enough to procure a court order if she approved. Thereby she committed no actionable wrong, either against the company or its bank.

The judgment below is right and is affirmed.