DORA HOLLOWAY, RESPONDENT, v. BARNES GROCER COMPANY, APPELLANT.[*]

In the Springfield Court of Appeals. Opinion filed March 30, 1929.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2625, p. 712, n. 61; Damages, 17CJ, section 361, p. 1059, n. 63; Motor Vehicles, 42CJ, section 583, p. 883, n. 31; section 777, p. 1031, n. 97; section 815, p. 1066, n. 65; section 816, p. 1067, n. 68; section 1133, p. 1271, n. 49; section 1139, p. 1275, n. 96; section 1148, p. 1282, n. 8; section 1152, p. 1283, n. 34; Negligence, 45CJ, section 482, p. 913, n. 74.

*Henson & Woody* for appellant.

*Cope & Tedrick* for respondent.

BAILEY, J.—Plaintiff sued defendant for damages for personal injuries sustained by her on the 3rd day of February, 1927. The injuries complained of resulted from plaintiff being thrown from a horse, which she was riding, on a public highway. The horse became frightened at a motor truck of defendant's being driven at the time by one of defendant's employees. A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $2500 and defendant appeals.

A demurrer to the evidence offered at the close of the whole case was overruled which action of the court is assigned as error. Considering the evidence most favorable to plaintiff, together with all reasonable inferences therefrom, and disregarding the evidence of defendant in conflict therewith, we have a state of facts about as follows: Plaintiff was a married woman and a school teacher. On the 3rd of February, 1927, she had been in Poplar Bluff and was returning home riding her horse, with her little daughter on the horse behind her. She was traveling East on U. S. Highway 60, going toward her home. At a place about three-quarters of a mile East of Poplar Bluff, the highway crosses a slough spanned by a bridge. Plaintiff testified that, "When we were about thirty or forty feet from the east end of the bridge across Palmer Slough, I heard a noise and looked up and saw a truck with a tarpaulin over it. We proceeded but the horse acted as if he was frightened. When I came about even with the end of the truck, the tarpaulin flapped on both sides in the horse's face, and he whirled around and started back. When I was about thirty or forty feet from the end of the bridge the truck was up the road about the curve at the Frisco crossing. The tarpaulin was flapping when I first saw it. After I left the bridge I traveled about seventy feet before I came to the truck, and the horse turned around. It is three-tenths of a mile from the bridge to the Frisco crossing. I rode this horse to school on bad days and at dif-

ferent times, and my little girl nearly always rode behind me. We have owned this horse five or six years, she is twelve or thirteen years old. She has never attempted to throw any one before. When riding this horse before this time I would pass cars on the road and they would pass me. She never at any time before this indicated that she was scary. We were so close to the truck when the horse turned around that I could almost put my hand on the hood. The truck was on its side, but nearer the center. From the bridge you can see all of the road to the Frisco crossing. I always watch what I am doing when riding horseback. Was riding astride so I would be safe. The terrible rattling is what attracted my attention to the truck. The truck was up where the road curves when my horse first showed signs of frightening. The truck did not stop when the horse began to frighten. My horse was going about four miles per hour. I intended to go past, but the horse swirled and went back the other way. When I fell off the horse my head hit the concrete, injuring it over the left eye and injuring the pupil of that eye.''

On cross-examination she testified as follows:

''The accident happened late in the afternoon, would say between four and five o'clock. Had been in Poplar Bluff since about one o'clock. During that time my horse was hitched on the east side between Mr. Boyt's store and the filling station. It is about half mile from where the horse was hitched to where I got hurt. Rode in a fast walk about four miles per hour. When I was about forty feet west of the end of the bridge I heard a terrifying noise where the truck was coming down the road. Did not tell Mr. Gilmore that the chains on the truck frightened my horse, but that the tarpaulin did. Do not know what kind of truck it was. When I first saw the truck it was about three-tenths of a mile from me, but I may have heard it before that time. We have had automobiles and I have driven them myself. I could not tell whether the truck had a muffler on it or not. The truck made the turbulent noise. I do not know whether it had rubber tires. I think solid tires make more noise than the pneumatic. It was not raining the day of the accident. The tarpaulin was over the cab of the truck, and was flapping and waving.''

The daughter of plaintiff, Emma Holloway, who was riding on the horse with her mother, testified that she was twelve years old; that the truck had a big tarpaulin on top of it and it was flapping and making lots of noise; that ''after the horse got across the bridge he kept his ears pricked up and jumped and twisted around until the truck got up to that place. I had ridden that horse lots of times before this, had ridden her to school along this highway and she had never attempted to run away or to throw me off.'' On cross-examination she testified that ''I estimate that the truck was going about

thirty miles an hour, and we were going about four. We were just past the opening there when the horse turned and ran back, nearly where they have it marked seventy-two feet from the bridge. We were clear around the curve and the truck was a little over 500 feet from us when the horse had already began to scare. He was scaring when he came off the bridge and continued to scare for seventy-two feet where he turned, and the truck kept coming closer. I was riding behind my mother, but I looked around.''

There was evidence on the part of defendant that the horse had scared at a truck loaded with stave blocks just as plaintiff was reaching the bridge; that the tarpaulin was securely fastened down in four places and put on and maintained in the customary manner; that the truck was being operated at a lawful rate of speed on the right hand side of the roadway and that the driver did all in his power to avoid injurying plaintiff.

It is undisputed that the driver of defendant's truck was at the time engaged in his master's business and that under the law he was required to drive the truck ''in a careful and prudent manner,'' and to ''exercise the highest degree of care and at a rate of speed so as not to endanger the property of another or the life or limb of any person.'' [Sec. 19, Laws of Mo. 1921, Extra Session.]

It is well settled in this State that horses, buggies and automobiles enjoy equal rights to the use of our highways. [O'Donnel v. O'Neill, 130 Mo. App. 360.] The only distinction made by statute is that the operator of a motor vehicle is required to exercise the highest degree of care, while the driver or rider of a horse is bound to observe only ordinary or reasonable care for the safety of others. Our courts, however, have never adopted the doctrine that an automobile is such a dangerous instumentality as to render the operator or owner thereof liable for an injury resulting from operation in the absence of negligence in the operation. [Hall v. Compton, 130 Mo. App. 675, 108 S. W. 1122; State v. Miller, 234 S. W. 813.] It is said that ''An automobile is recognized by courts as a lawful vehicle under the rules of the common law and, as such, its operator stands on equal ground with the drivers of other conveyances with respect to the right to enjoy the use of the public highway. The mere fact that plaintiff's horse took fright at the machine, of itself, would not give her a cause of action. As long as an autoist observes the laws of the road, he should not be held responsible for the consequences of a meeting between his machine and a vicious or high strung and insufficiently broken horse. But on account of its speed and power and the noises it emits, an automobile when carelessly run may be exceedingly terrifying even to gentle and well-broken horses, and the rules of the common law, as well as those of the statute (Rev. Stat. 1909,

ch. 83, sec. 8516, et seq.), demand of the drivers of such vehicles the observance of a due regard for the rights and safety of others." [Daily v. Maxwell, 152 Mo. App. 415, 1. c. 423, 133 S. W. 351.]

The foregoing rule is applicable to the facts of this case. It may also be said that, although defendant's truck was making no unusual noise for a truck of that kind and although it may have been customary for trucks in the vicinity of Poplar Bluff to be equipped with tarpaulins rolled and fastened over the top of the cab as in this case, nevertheless, if the driver of the truck saw, or by the exercise of due care could have seen, that the horse which plaintiff was riding was showing signs of fright and uneasiness at his approach and he failed to give heed thereto but continued to drive on without attempting to use the means available in an effort to remove the cause of fright, defendant would be liable, if such failure resulted in injury to plaintiff.

In Phelan v. Paving Company, 227 Mo. 666, 127 S. W. 318, 1. c. 710, the rule we have in mind is thus stated: "If the runaway was caused by such continuation of the noises, then defendant was liable though the continued noises were usual. The case in this aspect is the same as if one is in peril and another, seeing his peril omits to save him when within his power. It is but the humanitarian rule in one of its forms."

Plaintiff's evidence tended to show the horse showed fright from the time it first left the bridge and continued to do so until it whirled around, but that defendant's driver neither stopped the truck nor materially slackened its speed, although he was in a position to see the horse for a considerable distance before the accident. The fact, too, that a woman and little child were riding the horse was a circumstance requiring great care and consideration on the part of the operator of the truck. We are clear plaintiff made a case for the jury, at least under the humanitarian theory, which was pleaded.

Negligence was also charged in the petition in that defendant's agent operated the motor truck on the highway with a large white tarpaulin affixed thereto in such a manner as to be likely to frighten plaintiff's horse. Defendant, in a measure, submitted that issue in its instruction C, and is hardly in a position to raise the point that there was no evidence of negligence in that respect. [Torrance v. Pryor, 210 S. W. 430.] In any event, we are of the opinion there was some evidence of negligence on that phase of the case and the demurrer was properly overruled.

Plaintiff's Instruction No. 1, is premised by a statement of the law requiring defendant's agent, in operating defendant's motor truck, to exercise the highest degree of care, following the language of the statute. The instruction continues, in part, as follows:

"Therefore —————— if you further find that J. T. Gilmore was in the employ of defendant, and that he was at said time and place driving defendant's motor truck——and if you further find that as the said J. T. Gilmore approached the horse plaintiff was riding, if you find he did so, he negligently and carelessly operated and drove said motor truck at such a rapid rate of speed as to cause same to make a loud, unusual and terrifying noise; or negligently and carelessly operated said motor truck along and upon said highway with a large tarpaulin attached thereto, and that said tarpaulin was waving and flapping in the wind in such a manner that it would be likely to frighten horses upon said highway; and if you further find that such acts or either of them, if any, constituted negligence on the part of the said J. T. Gilmore and that as a direct result thereof, plaintiff's horse became frightened and threw plaintiff onto and against the pavement on said highway injuring her in the manner described in the evidence, then your verdict must be for the plaintiff."

It is urged that this Instruction is erroneous because it (1), by inference, tells the jury defendant was required to exercise the highest degree of care in equipping its truck with a tarpaulin, and (2) does not require the jury to find that the tarpaulin was so placed on the truck, "that an ordinarily prudent man would anticipate that it would frighten horses on the highway" because (3) it authorized the jury to find for plaintiff if the tarpaulin was so attached that, "it would be likely to frighten horses on the highway, not horses accustomed to automobiles, but any horse;" and (4) because it is in direct conflict with defendant's given Instruction A.

We shall consider together the first three points raised. It is conceded that defendant was not required to exercise the highest degree of care in the matter of placing the tarpaulin on the truck. The instruction makes defendant liable if defendant negligently operated the motor truck with a large tarpaulin attached thereto and waving and flapping in such a manner "that it would be likely to frighten horses." In support of this contention defendant cites the case of Place v. Cochran (S. D.), 173 N. W. 158, 5 A. L. R. 936, which announces a principle that, applied to the facts in this case, would mean that the jury should be required to find that defendant negligently fastened the tarpaulin to its truck in a manner that a person of ordinary prudence would anticipate that such condition would likely frighten ordinary horses usually to be met on the highway, before plaintiff would be entitled to recover. The case of Atkinson v. Milk Company, 44 Mo. App. 153, also cited by defendant, does not reach the question.

The rule in Missouri is that a person charged with negligence may be held liable for anything which, after the injury is complete, appears to have been a natural and probable result of his act or omis-

sion. [Nothstine v. Feldmann, 250 S. W. 589; Combs v. Standard Oil Co., 296 S. W. 317.] We think the jury should have been instructed that defendant was obliged to exercise ordinary care in the matter of fastening the tarpaulin on the truck and if they found defendant negligent in that respect and the plaintiff was riding an ordinarily gentle and broken horse then defendant would be liable if the frightening of plaintiff's horse was the natural and probable result of such negligence, if any there was. The instruction was not clear but confusing in this respect; it was also so framed that it made no distinction between defendant's duty in operating the truck, requiring the highest degree of care, and defendant's duty in fastening the tarpaulin thereon, requiring only ordinary care. This vice is emphasized by plaintiff's Instruction No. 3, which defines negligence, when used in other instructions with reference to the acts of defendant's employee in the *"management and operation"* of the truck, as the absence of "the highest degree of care." We believe the jury may have been misled by the instructions when taken as a whole.

The fourth objection to plaintiff's Instruction One, is that it was in conflict with defendant's given instruction "A," which reads as follows:

"The court instructs the jury there is no evidence that defendant's truck was making loud, unusual and terrifying noises at the time of and prior to the accident, by rattling and emitting sharp and loud explosions from the exhaust, and on these issues your verdict will be for plaintiff."

That portion of plaintiff's instruction which submits the question of the rapid rate of speed causing the truck to make loud, unusual and terrifying noise, does appear, in a measure, to conflict with defendant's instruction A. There was some evidence that the truck made a very loud noise, but the cause of the noise is not revealed by the evidence. Instruction A tells the jury that there was no evidence that the truck was making a loud or unusual noise by "rattling" or from "explosions of the exhaust," while instruction "One" of plaintiff's permits the jury to find such noise, if any, was caused by the rapid rate of speed. Such instructions lead to confusion and are too finely drawn to be of benefit to a jury in reaching a proper verdict. We have carefully searched the record and find no evidence that the speed of the truck caused loud and unusual noises. There was, in fact, no evidence of such noise except plaintiff's bare statement. The two instructions, when considered together, tend to confuse and we think defendant's point well taken; moreover, plaintiff's instruction as drawn, was not supported by the evidence.

Plaintiff's Instruction No. 2, after requiring the jury to find the relative positions of the horse and truck upon the highway, continues as follows:

"and if you further find that as the said J. T. Gilmore approached the horse plaintiff was riding, if you find he did so, plaintiff's horse became frightened at the said motor truck and attempted to run away with plaintiff; and if you further find that the said J. T. Gilmore saw, or by the exercise of the highest degree of care, could have seen that plaintiff's said horse was frightened and attempting to run away, if you so find, and that plaintiff was in immediate danger of being injured, if you find she was in immediate danger of being injured, in time thereafter, by the exercise of the highest degree of care and with the means of appliances at hand and without injury to the occupants of said motor truck and without damage to said truck, to have stopped same in time to have prevented plaintiff's horse from throwing her, if you find it did throw her, and injuring her in the manner described in the evidence, then your verdict must be for the plaintiff."

Defendant contends this instruction is error because it permits the jury to presume that if defendant's driver had stopped the truck when he saw plaintiff's horse was frightened, the fright would have subsided and plaintiff would not have been thrown. We have found there was sufficient evidence to submit the case on the humanitarian theory, but this instruction fails to require the jury to find that the failure to stop the truck was the proximate cause of the injury but assumes that fact. It was erroneous in that respect. It was also erroneous in that it nowhere required the jury to find that defendant failed to stop and to exercise due care to avoid the injury, which is a necessary element of plaintiff's case under the humanitarian theory. [Hawkins v. Wells, 297 S. W. l. c. 196; Banks v. Morris, 257 S. W. 482.]

Complaint is made of plaintiff's instruction 4, because it submits the question of permanent injuries. It is charged there was no evidence of permanent injury. Dr. Taylor testified plaintiff's spinal column was bent slightly to one side and that it would likely be constantly sore and irritate the nerves as long as she lives; that she sustained an injury to the uterus and a dangerous major operation is the only thing that would remedy that condition. We believe this evidence was sufficient to submit the question of permanent injury. The jury, from the evidence adduced, might find with reasonable certainty that the injuries to plaintiff's spine and uterus were permanent, which is within the rule. [Stahlberg v. Brands, 299 S. W. 836.]

It seems unnecessary to consider other alleged assignments. For the errors in plaintiff's instructions this cause should be reversed and remanded. It is so ordered.

*Cox, P. J.,* concurs; *Smith, J.,* not sitting.