ARTHUR PETERS v. ROBERT FLEMING, Defendant, THE LONDON & LANCASHIRE INDEMNITY COMPANY OF AMERICA, Garnishee and Appellant.—46 S. W. (2d) 581.

Division Two, February 17, 1932.

*Wilbur C. Schwartz* and *Charles E. Morrow* for appellant.

*Murtha J. Hackett* and *James J. O'Donohoe* for respondent.

WHITE, P. J.—Plaintiff Arthur Peters, as an employee of defendant Robert Fleming, recovered judgment December 28, 1927, for $15,000 on account of personal injuries sustained September 15, 1925. Execution was issued upon that judgment and the Indemnity Company of America summoned as Garnishee. Upon the issues made up by the garnishee's answer to plaintiff's interrogatories, plaintiff's denial and garnishee's reply a trial was held resulting in a judgment in favor of the plaintiff and against the garnishee for $10,000, the limit of garnishee's indemnity policy in favor of Fleming. The appeal is from that judgment.

I. The garnishee makes the point that the court obtained no jurisdiction of the subject-matter of this action because the writ of garnishment was not served upon the Superintendent of Insurance but upon his deputy. The garnishee is not in position to urge the objection; it did not object to the jurisdiction of the circuit court in that court. It filed its answer to the interrogatories and went to trial upon the issues tendered.

Besides, under Section 5895, Revised Statutes 1929, service upon the deputy in case of the absence, etc., of the Superintendent, is made valid service. The return of the sheriff recites that the Superintendent of Insurance was absent and therefore service was had upon the deputy.

II. The appellant further claims that the indemnity policy sued on did not cover the building nor the work performed thereon by the defendant Fleming at the time and place where the plaintiff was injured.

The policy agrees to indemnify the assured (Fleming) against loss by reason of the liability imposed upon him for damages caused or bodily injuries suffered by any employee or employees of the insured, as the result of any accident "at a location named in the

declarations or elsewhere and due to or caused by the operation of the trade or business of the assured as described in the declarations and conducted at the locations named therein."

It seems conceded that the declarations included the apartment building at 4616 Lindell Avenue in the city of St. Louis. To the policy is attached a rider "for the purpose of furnishing additional space for description of business operations and premium rates for work," etc. It contains this clause:

"Kind of Trade, Business, Profession or Occupation (Manual Classification)—1. Contractors—Building private residences, flats or apartments, with or without stories, one story stores and stores with offices above, private stables and private garages, and buildings not mercantile or factory, *all not exceeding three stories and basement in height* (no blasting), excluding the erection of churches, theatres, railroad stations, round houses, court houses, city halls and capitol buildings."

The defendants introduced some photographs of the building at 4616 Lindell which it is claimed show the building was four stories high instead of three stories and basement. The photograph of the front of the building shows the first floor is of stone, the three floors above of brick; the side of the building shows except at the front four floors of brick. Whether or not there were more than three stories or a basement turns largely upon the meaning of the word "basement." Respondent cites some authorities including 7 Corpus Juris, 933, and the dictionaries to the effect that a basement is the lower part of a building. It may be partly below the ground. One of the witnesses said a basement was anything below the floor level or street level. Others declared a basement was the lowest part of a building and was *generally partly* below the street level. None of the witnesses qualified as experts on the meaning of the word "basement." It was testified that the front fifty feet of the first floor was on a level with the walk and 150 feet in the rear was below the level of the ground. Under that rear 150 feet was a sub-basement or cellar which the garnishee claimed was the basement. It asserted that the first floor which the plaintiff called the basement was one story above the basement.

The garnishee claimed that the evidence conclusively showed the building to be four stories high and it therefore did not come within the terms of the rider to the policy. The plaintiff contended that it was a question for the jury whether the house was three stories and a basement as the matter was understood by the parties to the contract; that the parties treated the contract as covering the building at 4616 Lindell; Fleming paid and the Company received premiums upon the insurance policy with respect to the employees upon

that building and the garnishee not only collected the premiums but retained those premiums even after the suit was brought.

In support of this point the plaintiff introduced a power of attorney from the Garnishee Company to Joseph P. Kelly, Jr., making him "its true and lawful agent and attorney-in-fact to make, execute, seal and deliver for and on its behalf, as surety, and as its act and deed, where required, any and all policies, bonds, recognizances, contracts of indemnity and all other writings obligatory in the nature of a bond, recognizance or conditional undertaking.
. . .

"It is understood that any bond, executed under this power required in any State which has a resident agent's law, shall be countersigned by a licensed agent of the company, residing in the State where the bond is required.

"And the execution of such instruments, in pursuance of these presents, shall be as binding on said company, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the company in their own proper persons."

The policy had the usual provisions about its obligation to defend any suit against assured on account of injuries, the giving of notice by the assured when sued; aiding in a settlement when requested; a no-action clause to the effect that no action should lie against the Company until the amount of damages is determined either by final judgment against the assured or by agreement of the parties with the written consent of the company.

The policy further provided that if the assured should make any structural or unusual alterations of the structure or premises or of the plant described, that the policy should cover such operations, except . . . etc.

It also provided that the assured, whenever requested by the company should furnish the company with a written statement of the entire amount of compensation earned by all persons engaged in the operations covered by this policy, which statement should be divided so as to show the amount of compensation earned in each of the classifications described in the declarations.

The *declarations* mentioned in the policy stated the date and duration of the policy and under "the locations of the factories, buildings," etc., was this: "St. Louis and elsewhere in the State of Missouri." It seems that that comprehensive statement was made more definite by the audit of the company's attorney-in-fact.

There is a further provision that if complete and accurate pay roll records are not kept by assured so as to show the divisions thereof according to the foregoing classification, of the entire, actual pay

roll shall be considered to have been expended under the highest rate of classification.

The indefinite statement in the declarations seemed to have been clearly understood by the parties in the trial of the case, for they did not attempt to make it clearer except as it appears in the testimony of Kelly, Garnishee's attorney-in-fact who had full authority with respect to the contract. Apparently it was his duty to examine and make an audit of the insured's accounts. Kelly at first identified a paper marked "Exhibit G" which was not offered in evidence. It designated the Carlton Apartment job 4616 Lindell Boulevard, with Kelly's signature attached. He said the pay roll there was audited quarterly and this paper showed the audit of the accounts relating to that apartment. He had collected the premiums on the policy that covered the Carlton apartments. The audit was made October 10, 1925. The name of Arthur Peters, plaintiff, appears in the audit, showing his pay for sixteen hours. The premium was collected for the end of the quarter which included all work "on this job" and any other jobs in that quarter. The witness was unable to tell the percentage he collected on the pay rolls of that particular job, that the policy contained the rate but he collected the premium which was probably $3.32 per hundred. The witness found in his audit a pay roll expenditure on this building of $364, for five weeks, and a premium of $11.08 collected on that specific job. The initial premium on the policy of $47.50 was paid. No part of the premium paid for insuring the workmen on this particular job was ever returned.

Mr. Kelly testified further that he had been through the Carlton Apartments, and that he thought the first floor was the basement; that is, the floor where you enter on a level with the walk in front. That was objected to with no ruling on the objection. Defendant's attorney suggested the witness should describe it. The witness then said:

"If I describe it I will describe it for insurance purposes," and then over the objection and exception of the defendant he said: "It is one, two, three stories and basement in height."

The court modified and gave on behalf of the plaintiff Instruction No. 2:

"No. 2

"The court instructs the jury that it makes no difference whether the building, 4616 Lindell Boulevard, known as 'Carlton Apartment,' is now or was, at the time garnisher (plaintiff) was injured, three, four or more stories in height; and in arriving at your verdict you are not to take into consideration the number of stories of said apartment, but you are to disregard the same (if you further find

that the garnishee, the Indemnity Company construed and treated said building as a three-story building prior to the injury to plaintiff, Peters).''

The part in parenthesis was added by the court.

And on behalf of defendant it gave Instruction No. 1, as follows:

## "No. 1

"The court instructs the jury that if you find and believe from the evidence that the building mentioned in the evidence, upon which the plaintiff was working at the time he claims to have been injured, exceeded three stories and basement in height, then the plaintiff is not entitled to recover herein against the garnishee and your verdict should be that the London and Lancashire Indemnity Company of America, garnishee herein, is not indebted to the defendant, Robert Fleming (unless you further find that the garnishee, the London and Lancashire Indemnity Company, by its actions, conduct and collections of premiums construed and treated the building covered by the policy as a three-story building).''

The instruction as asked by garnishee did not contain the part we put in parenthesis which was added by the court, over the garnishee's objection and exception.

The defendant also asked an instruction to the effect that the word "basement" means the ground floor of a house or other building beneath the upper story, wholly or partly sunk below the level of the ground, which instruction the court refused.

From these instructions given the court left it to the jury to determine whether the building was more than three stories and a basement in height. The appellant could not complain of that because its instruction as asked presented that issue. It was not presented by the plaintiff.

Thus the issue was squarely put to the jury to determine whether the garnishee company and the plaintiff treated the building as a three-story building. It is claimed by the appellant that the contract is unambiguous because the meaning of "basement" is clearly defined and there could be no two opinions as to its application to this building, that it was conclusively a four-story building and not a building of three stories and basement; garnishee presented a demurrer to the evidence on that theory.

Many words and phrases employed in contracts have acquired definite meanings by judicial construction. [13 C. J. 532-4.] These expressions, contractual terms, usually go to the scope and obligation of a contract. On the other hand, words by custom and usage acquire a technical significance entirely different from their ordinary meanings. [14 C. J. 498-9; Soutier v. Kellerman, 18 Mo. 509-11; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 1. c. 643; Landau

Grocery Co. v. Hart, 223 S. W. 793.] Further, parties to a contract may give a peculiar meaning to terms applied to the subject-matter of their contracts and their intention so to do may be shown by parol and by their treatment of the contract. The parties to this contract had a right to call the first floor a basement if they wanted to whether it was generally so understood or not.

While Mr. Kelly's statement that for insurance purposes the building was three stories and a basement, may be insufficient to show a custom, which we do not decide, he was authorized to act for the company in interpretative treatment of the contract. His evidence tended to show how the parties understood and applied the expression "three stories and basement." The evidence was sufficient to show that those terms as generally understood were ambiguous so as to permit evidence as to how the parties treated and understood the contract, and that this building was treated as covered by the policy. The garnishee received all the advantages of the contract, as so interpreted, and declined to repay the money which it collected by reason of insuring the defendant against liability for injuries to employees working on that particular building. The issue was properly submitted to a jury. There was no error, therefore, in refusing the garnishee's offered instruction defining basement when many other definitions somewhat different were shown, and no error in overruling garnishee's demurrer to the evidence.

III. Appellant claims that the plaintiff did not plead waiver or estoppel and therefore could not be heard to say that the actions of the garnishee in collecting premiums and failing to return them is a defense, on the theory that estoppel cannot create a contract nor a cause of action.

The appellant itself in the first place introduced evidence of definitions of "basement." The court admitted Kelly's evidence because it tended to show that the garnishee's collection of the premium which covered those Carlton Apartments was contemplated by the policy. The evidence did not show an attempt to create a contract or cause of action. It tended to show interpretation of the policy. The instructions did not submit the question of estoppel, but the question of the parties' treatment of their contract.

The judgment is affirmed. All concur.