GEORGE SLYMAN, APPELLANT, v. JOHN SIMON ET AL., RESPONDENTS.—
48 S. W. (2d) 144.

Kansas City Court of Appeals. February 29, 1932.

*John I. Williamson, W. B. Dickinson* and *Martin B. Dickinson* for appellant.

*Meservey, Michaels, Blackmar, Newkirk & Eager* and *Robt. E. Coleberd* for respondent.

ARNOLD, J.—This is an action to recover on three promissory notes. Plaintiff's petition is in usual form, setting up in separate counts the execution and delivery on February 2, 1920, by defendants to plaintiff of said notes. The suit was instituted January 8, 1930.

Defendants' answer was a general denial, and for affirmative defense pleaded lack of consideration, compromise, satisfaction, payment and discharge. The trial resulted in a verdict and judgment for defendants. After motion for new trial overruled, plaintiff appealed.

The record discloses that defendants, husband and wife, executed three notes payable to plaintiff, all dated February 2, 1920, two of which are in the amount of $500, each, and one for $450. A credit in the sum of $267, made March 22, 1920, is admitted in the petition. According to plaintiff's testimony, at the time of the execution of the notes, defendants owed him about $1000, for money loaned, and an additional amount for machinery. Prior to the execution of the notes, plaintiff and his attorney visited the place of business of the defendant, John Simon, an ice cream cone manufacturer in Kansas City, Missouri. At the time of the execution of said notes, defendant also delivered a chattel mortgage on the machinery in said place of business. Relative to this machinery, plaintiff's attorney, who testified as a witness, stated that when the notes and mortgage were delivered, it was agreed in the chattel mortgage that "in the event defendant Simon did not continue in business, then the plaintiff was to take the property and sell it to the best advantage he could and apply the resultant credit." The chattel mortgage was not in evidence, having been destroyed by the recorder of deeds of Jackson county, Missouri, in accordance with the provisions of the statute relating to the destruction of such documents after a period of five years from the date of filing thereof.

It further appears that defendants left Kansas City about a month after the execution of these instruments, at which time the house containing the machinery was locked and the key thereto delivered to the landlord. Thereafter, plaintiff took possession of the machinery and sold part of it, crediting the proceeds in the amount above indicated; the rest of said machinery was still in possession of plaintiff at the time this suit was brought.

On behalf of defendants, the evidence tends to show the notes were made to secure money to be thereafter advanced to them by plaintiff; that at the time the notes were executed, defendants were not in any wise indebted to plaintiff; that plaintiff had not then advanced them any money. It was admitted that sometime after the execution of the instruments defendants left Kansas City, but returned about a year later; that plaintiff then went to see them, claiming they owed him some money; that, in the discussion which followed, plaintiff offered to take $100 "to make them square;" that defendant John Simon paid plaintiff the $100; that a few days later, he asked for his notes; that plaintiff informed him he no longer had them, but had torn them up, and that "it did not amount to

anything." Defendant also testified plaintiff, at no time thereafter, made demand for payment of said notes until nearly ten years later, when this action was instituted. John Simon further testified he left Kansas City because he had no money with which to continue in business here. As to the circumstances under which the notes and mortgage were executed, defendant was corroborated by two other witnesses.

There was also testimony of the sales manager of the Great Western Stove Company who stated that in 1920, plaintiff asked him to look at the machinery at the place of business of the defendant, John Simon, which he did; that the reasonable value thereof, at that time, was around $2,000 to $2,200.

Plaintiff testified, in rebuttal, that the $100 settlement mentioned in evidence by defendant, was a compromise of a separate item and matter, having nothing to do with the notes in question.

In this state of the record, at the request of plaintiff, the court gave an instruction directing the jury to find for him.

"Unless you find . . . that defendant had paid the notes in suit, or that the notes in suit had been compromised and settled, or that the notes in suit were given without consideration. . . ."

On defendants' behalf, the court instructed the jury that their verdict should be for the defendants, if the jury found that—"a chattel mortgage was executed by the defendants covering certain ice cream cone machinery and equipment then owned by the defendants; and . . . after the execution of said notes and chattel mortgage the plaintiff took and retained possession of such . . . machinery and equipment; . . . that plaintiff sold a part of said property and received the proceeds of the sale thereof, and that the plaintiff now retains the remainder of said property . . . and that at the time said property was taken by plaintiff, the reasonable value of said property was equal to or greater than the amount unpaid on said notes . . ."

Further, on behalf of defendants, the court instructed the jury as follows:

"If you find and believe from the evidence, that at the time the defendants executed the notes offered in evidence, the plaintiff agreed to loan to the defendants a sum of money equal to the amount of said notes; and if you further find and believe from the evidence that the plaintiff did not advance to the defendants any money after the execution of said notes, then your verdict will be for the defendants."

. . . . . .

"If you find and believe from the evidence that after the execution of the promissory notes offered in evidence there was a controversy between the plaintiff and the defendants as to the amount

.of money the defendants owed to plaintiff; and if you further find and believe from the evidence that the plaintiff and the defendants, in order to settle such controversy, agreed that the defendants should pay to plaintiff the sum of $100, and that the same would be received by plaintiff in full settlement of all amounts due the plaintiff from the defendants; and if you further find and believe from the evidence that the defendants paid to the plaintiff $100, then your verdict will be for the defendants.''

Plaintiff makes several assignments of error, only three of which are briefed and argued, and to these we direct our attention.

It is first urged that instruction numbered 2, hereinabove shown, was erroneous in directing a verdict for defendants, if the jury believed the value of the machinery taken or retained by plaintiff equaled or exceeded the amount due on the notes. It is argued that such a taking and retention was a conversion by plaintiff giving rise to a separate and distinct cause of action by defendants against him, but could not properly be set up as a counterclaim, because not arising from the action sued on. In support of his position, plaintiff cites authorities setting forth the rule that matters arising out of torts are not proper matters for set-off or counterclaim in a controversy such as this; and it is asserted no set-off or counterclaim was pleaded by defendants.

It is unnecessary for us to rule upon the question whether a conversion might properly have been pleaded as growing out of the transaction, in connection with the execution of the notes. It is defendants' position that this conversion of the security given for the notes may, and properly should be treated as a satisfaction of payment thereof, and, therefore, they were not required to plead the same by way of set-off or counterclaim. It is further asserted in this connection that, as plaintiff in his testimony voluntarily disclosed the taking and retention of the property by him, such issue of conversion was injected into the case by his voluntary action, and, regardless of the state of the pleadings, the issue was properly in the cause for consideration. Under the particular facts and circumstances of the case, we are in accord with defendants' contentions.

Plaintiff, in making his own case, offered as a witness, his attorney who prepared the chattel mortgage and notes. As heretofore stated, the attorney testified there was an agreement in the chattel mortgage that plaintiff was to take the mortgaged property, sell it to the best advantage and apply the proceeds as a credit on the notes, in the event John Simon failed to continue the operation of his business. Hence, it appears the condition under which plaintiff was to act in the event of default, namely the agreement in the chattel mortgage, became operative. The notes and chattel mortgage concurrently

executed must be considered together. Thus viewed, it appears there was an agreement for satisfaction, whole or partial, to be made by the plaintiff himself, as realized from the mortgaged property. This agreement plaintiff showed as part of his own case. The issue thus developed was as to whether or not the debt in suit had been discharged by virtue of the method therein agreed upon. We are inclined to believe that such a discharge of the debt, when invoked as a defense, falls within the category of payment and satisfaction rather than a counterclaim. In any event, in view of the facts of this case, it may be so considered. "Conversion of the collateral by the pledgee constitutes a discharge of the secured debt to the extent of the value of the property converted." [49 C. J. 970; Skud v. Tillinghast, 195 Fed. 1.] Payment may be made in some other manner than by money. [First National Bank v. Hahn, 197 Mo. App. 593, 198 S. W. 489.] Proof of a state of facts which, because of the very nature thereof, wholly defeats plaintiff's claim, may be regarded as a matter of defense and payment under the circumstances as disclosed by this record, and need not be set up as a counterclaim. This court so ruled in Markowitz v. Markowitz, 290 S. W. 119. See also Ely Walker Dry Goods Co. v. Karnes, 9 S. W. (2d) 245, where it was held that conversion of a collateral could be set up under a plea in bar of a suit on notes. However, plaintiff joined in this theory, and in his instruction submitted the question of satisfaction, which by fair implication, only referred to payment by the alleged conversion.

A more serious question is presented by the fact that defendants did not set up the conversion in their answer, contenting themselves with asserting, generally, lack of consideration, payment and satisfaction, and compromise. The general rule is stated in 49 C. J. 992, as follows:

"The pledgor will usually be allowed to prove a conversion of the collateral by the pledgee, or his negligence in realizing on it and applying the proceeds to payment of the debt, under plea of *non assumpsit*, or of payment."

Under our code, the facts relied on as a payment or satisfaction should be set up, if any payment other than in money, is intended to be asserted. [First National Bank v. Hahn, supra; Peoples Bank v. Stewart, 136 Mo. App. 24, 117 S. W. 99; (same case), 152 Mo. App. 314, 133 S. W. 70.] In the absence of anything more in the case, we would be disposed to hold the pleadings insufficient to support the submission to the jury of satisfaction in the special manner here relied upon as a defense. However, since it appears it was the plaintiff who introduced in evidence the agreement contained in the chattel mortgage, which, by its terms required him to sell the mortgaged property and credit the proceeds; and, from his testimony,

it further appears that he took possession of this property and retained a considerable part of it, treating this taking and retention as a conversion thereof, and now makes no complaint of its being considered as a conversion, we hold, under the circumstances, the matter was properly submissible to the jury. Further, plaintiff developed the question of salability and value of said property so retained by him, and, without objection, permitted the introduction of testimony by defendants on the matter of value of the machinery taken. Plaintiff, therefore, is in no position to complain of the action of the trial court. It has been held that where the plaintiff's own testimony raises an inference of payment, whether on direct or cross-examination, he cannot recover, even if that defense is not pleaded. [Ellison v. Bowman, 29 Mo. App. 439.] It is not error, under such circumstances, to instruct the jury upon the question thus presented. [Menefee v. Diggs, 186 Mo. App. 659, 172 S. W. 427.] Both parties treated the issue as being in the case and within the scope of the pleadings. Further, it has been held, "It is a good defense to such a suit that the creditor agreed to realize first on the collateral." [49 C. J. 990.]

Plaintiff next urges that said instruction is erroneous for being indefinite as to the machinery and equipment referred to. This, it is argued, vitally affects the instruction, in view of the testimony of defendant John Simon, that plaintiff also owned some of the machinery which was stored in defendants' place of business, at the time in question. In other words, plaintiff contends the instruction allowed the jury to find that plaintiff converted his own machinery, and that defendants were entitled to a credit for the value thereof. The confusion in the record, if any, apparently arises by reason of the obvious difficulty of the witness in speaking the English language. However, we think the contention is completely answered by the fact, clearly established, that the plaintiff did not assert or claim ownership of any of the machinery. However, the instruction points out quite definitely the exact machinery and equipment intended. It plainly specifies the chattel mortgage covering certain ice cream cone machinery and equipment and hypothesizes a conversion of that machinery and equipment. Since defendants executed and delivered the chattel mortgage specifying the machinery, and plaintiff accepted it as security and agreed to apply the assets of the property described therein on the notes, such chattel mortgage may not be disputed. There is testimony in the record of the witness who, at plaintiff's request, inspected and valued the property at defendants' place of business. It seems reasonably clear that the property referred to was sufficiently identified as that of which plaintiff had taken possession under the chattel mortgage. Plaintiff also concedes in his brief that the articles which remained in the plant when defendants

left Kansas City were "apparently the same articles which were included in the chattel mortgage." As the instruction, on its face, relates only to such machinery and equipment as was valued under the chattel mortgage, we think the jury could not have been misled, and that plaintiff's criticism of the instruction is not well founded.

Plaintiff also urges as error the giving of instruction No. 5, heretofore set forth, which submitted the issue of whether there was a controversy between the parties as to the amount of money owing to the plaintiff, and whether the sum of $100 was paid and accepted in full settlement of said controversy. It is contended the evidence fails to show a bona fide dispute as to defendants' liability, or the amount of the notes, and hence, the rule governing compromise finds no support in the evidence, and therefore has no place in the instruction.

Plaintiff's contention is without substantial basis. By his own instruction, and there was substantial testimony concerning this matter, this specific issue as to whether the notes in suit had been compromised, was submitted to the jury. Therefore plaintiff cannot now convict the trial court of error in submitting a similar issue in defendants' instructions. [Securities Investment Co. v. International Shoe Co., 5 S. W. (2d) 682.] Moreover, the evidence as to a compromise was introduced without objection. Since both parties treated and submitted the matter of settlement as within the scope of the pleadings, the action of the trial court was proper, and the parties will be here confined to the theory upon which the cause was tried. The finding of the jury, which was in favor of defendants, is conclusive upon this court, in the absence of error prejudicial to any of plaintiff's rights. Finding no such error, the judgment is affirmed. All concur.