Herman William BANKS, Appellant,

v.

Paul Revere KOOGLER, Respondent.

No. 44930.

Supreme Court of Missouri.

Division No. 2.

June 11, 1956.

Rehearing Denied July 9, 1956.

defendant was driving his Buick automobile southward on Highway 65. There were no stop signs on Highway 40, but there was a stop sign on Highway 65 located twenty or twenty-one feet north of Highway 40 which apparently had been placed there by the State Highway Commission.

As plaintiff approached the intersection he was driving twenty-five to thirty miles per hour. He saw a car on Highway 65, in front of defendant's car, which had slowed down as though to stop, but it did not stop and plaintiff had to apply his brakes to avoid hitting it. When that car went by plaintiff then proceeded across the intersection at about fifteen miles per hour. Plaintiff testified that he first saw defendant's automobile when it was about ten feet north of the northern edge of Highway 40, that it kept coming and did not thereafter stop before entering upon Highway 40, and that it struck the left rear part of his truck. The debris on the highway indicated that the point of impact was four feet east of the center line of Highway 65 and six feet south of the center line of Highway 40.

Defendant testified that as he approached the intersection of Highways 65 and 40 he saw a "considerable amount" of traffic on Highway 40 and he slowed down. After a car ahead of him drove out onto Highway 40 he "pulled up to the stop sign and stopped" with the windshield post of his car about even with the stop sign. After looking to the left and then to the right, and seeing no traffic, he proceeded forward, following the car ahead of him by twenty or thirty feet. By the time he reached Highway 40 he had gained a speed of about five miles an hour and could have stopped within "a couple of feet" of the northern edge of Highway 40. He admitted that after he started forward, and until he was one-fourth of the way across Highway 40, he did not again look to his right because "the highway seemed perfectly clear for hundreds of feet." Plaintiff's truck suddenly "loomed" in front of him and he quickly applied his brakes. He thought his automobile had stopped or that it came to a stop at the time of the collision.

------◆------

Leimbrock & Ward, Johnson & Butterfield, Marshall, Roland F. Zeigel, Kirksville, for appellant.

Jayne & Jayne, Kirksville, for respondent.

STOCKARD, Commissioner.

Plaintiff has appealed from an order granting defendant a new trial after judgment for plaintiff in the amount of $15,450 in an action for damages resulting from an automobile collision. The motion for new trial was sustained on the ground that one of plaintiff's instructions was erroneous.

The collision in question occurred on March 18, 1953 at the intersection of U.S. Highways 40 and 65 known as Marshall Junction. Plaintiff was driving his GMC pick-up truck eastward on Highway 40 and

Plaintiff testified that immediately after the collision defendant said to him, "It's all my fault" and "when I did see it (plaintiff's truck) it was too late. I put my foot on the accelerator instead of the brake." Defendant did not know "exactly" why he could not see plaintiff's approaching truck, but, in his words, "I think if one looks at the angle of that crossing, you can see why, when I looked forward past my passengers (there were two in the front seat) and looked to the right, how either the stop sign or the windshield post could have blurred out quite a considerable portion of that highway (Highway 40) from my vision, which I didn't realize at the moment, because what I saw was perfectly clear."

Plaintiff submitted his case on both primary and humanitarian negligence. Plaintiff's instruction P2 submitted primary negligence, and after hypothesizing certain facts it contained the following language: "And if you further find and believe from the evidence that there was a stop sign at said intersection, warning drivers approaching said Highway 40 from the north to come to a stop before proceeding onto said Highway 40; and if you further find and believe that the said defendant, Koogler, did not stop but proceeded out into the traveled portion of said Highway 40 without stopping; and if you further find and believe that such failure on the part of the defendant to stop his said automobile before proceeding into the traveled portion of said Highway 40 was negligence on his part, * * *." The trial court granted a new trial because "there was no evidence from which a jury could find that the defendant failed to stop at the stop sign mentioned in the evidence and that instruction allowed the jury to make such a finding and the instruction was not, therefore, supported by the evidence."

 Failure to obey a stop sign at an intersection of public highways is an element for consideration by the jury in determining the question of negligence for the reason that one who fails to obey such warning sign is not exercising the highest degree of care required of the operator of an ·automobile. Section 304.010 RSMo 1949, V.A.M.S. Depending upon the local conditions the stop sign may be near to the common area of the two intersecting highways, or it may be back 20 feet as in this case, or for example it may be back as far as 90 feet as in George v. Allen, 362 Mo. 971, 245 S.W.2d 848. "The proper place to stop in order to comply with the duty of stopping upon coming to an intersection with a right of way street or one where a stop sign is posted may be a question of fact. It may be behind the prolongation of the property line, at the intersection, or at the stop sign." 2 Blashfield, Cyclopedia of Automobile Law (perm.ed.) § 1035. Whether the motorist stopped "at the stop sign" is not necessarily the determining factor of whether the motorist stopped before entering the intersection in compliance with the warning conveyed by the stop sign.

 The instruction in this case did not submit the question of whether defendant stopped at the stop sign, and a finding that defendant did not so stop was not essential to plaintiff's submission of negligence by this instruction. The issues submitted by the instruction were whether there was a stop sign warning the defendant to stop before proceeding onto Highway 40, and whether the defendant proceeded into the traveled portion of Highway 40 without stopping. This means, of course, a proper and effective stop to carry out·the purpose of the warning conveyed by the stop sign. It was immaterial in this case whether ·or not defendant stopped "at the stop sign" as distinguished from some other exact location, and the trial court was not justified in granting a new trial for the specific reason stated.

 Defendant now asserts that there was no evidence to support a finding that defendant "did not stop in compliance with the admonition of the stop sign before proceeding onto the traveled portion of Highway 40." In determining this question the evidence must be viewed in the light most favorable to plaintiff at whose instance and request the instruction was given. Palmer

v. Lasswell, Mo.Sup., 287 S.W.2d 822; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756. Defendant and one of his passengers testified that he stopped the automobile at the stop sign, but another of defendant's witnesses, who was also a passenger in defendant's automobile, testified that when the automobile was stopped the front end was "ten feet or more" from Highway 40. Plaintiff, on the other hand, testified that when he first saw defendant's automobile it was "about ten feet" north of Highway 40 and that it did not thereafter stop. There was evidence that defendant did not stop until he reached a point "ten feet or more" from Highway 40 and there was also evidence that defendant did not stop after reaching a point "about ten feet" from the highway. Where the duty of stopping has its basis in the duty to use due care to avoid a collision, the question of whether that duty has been fulfilled is ordinarily one of fact. 2 Blashfield, Cyclopedia of Automobile Law (perm.ed.) § 1035. There was evidence to support a finding that defendant did not make an effective and proper stop before proceeding onto the traveled portion of Highway 40, and therefore, there was evidence to support the submission of negligence in this instruction.

In addition to the above conclusion, defendant is in no position to object that the instruction was not supported by substantial evidence. Instruction D5 given at the request of the defendant contained this language: "The court instructs the jury that even if they find from the evidence that at the time and place mentioned in the evidence the defendant, Paul Koogler, failed to exercise the highest degree of care and was negligent in that he failed to come to a stop before proceeding into Highway 40, as set out in instruction P2 * *." Defendant cannot complain of an alleged defect in plaintiff's instruction which is common to his instruction, Palmer v. Lasswell, Mo.Sup., 287 S.W.2d 822, and defendant cannot assert error, and certainly cannot obtain a new trial, on the ground that there was not sufficient evidence to support the submission to the jury of an issue at the request of the plaintiff, when that same issue was submitted to the jury in another instruction at the request of the defendant. Peters v. Fleming, 329 Mo. 870, 46 S.W.2d 581; Dunlap v. Griffith, 146 Mo. 283, 47 S.W. 917; Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18; Slyman v. Simon, 226 Mo. App. 1000, 48 S.W.2d 140; Roush v. Hussey Lumber Co., Mo.App., 27 S.W.2d 1033; Holloway v. Barnes Grocer Co., 223 Mo. App. 1026, 15 S.W.2d 917.

Defendant has briefed other points, which it is claimed will sustain the granting of a new trial. He first contends that plaintiff was guilty of negligence as a matter of law and therefore is not entitled to recover on primary negligence because plaintiff admitted that "he did not see defendant's car until plaintiff himself was in the middle of the intersection, even though from any point 125 feet west of the intersection he could have seen a car on Highway 65 at any point within 200 feet of the intersection." Defendant cites several cases, all of which hold that a failure to look on the part of a plaintiff, where a duty to look exists, and a failure to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. However, the cited cases are distinguishable on their facts, and Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626, one of the cases cited by defendant, appears to be authority that, under the circumstances of this case, it was defendant, and not plaintiff, who was negligent as a matter of law.

When we accept the facts to be as contended by defendant, plaintiff was in the intersection when he first saw defendant's automobile, and at that time defendant's automobile was about ten feet north of Highway 40 proceeding at not more than five miles an hour and, according to defendant, capable of being stopped before it reached Highway 40. Plaintiff approached the intersection from the defendant's right in full view of the defendant and entered the intersection first. In compliance with the warning of the stop sign defendant was not to enter the intersection unless it was safe to do so. Although a motorist first

entering an intersection does not have the right to proceed regardless of the conditions confronting him, Wilson v. Toliver, Mo.Sup., 285 S.W.2d 575, in the circumstances of this case plaintiff had the right to proceed unless and until he saw, or by the exercise of the highest degree of care could have seen, that defendant's automobile would continue into and across the intersection without yielding the right of way. Section 304.020(12) RSMo 1949, V.A.M.S.; Lillard v. Bradford, 241 Mo.App. 538, 243 S.W.2d 359; Sommer v. St. Louis Public Service Co., Mo.App., 262 S.W.2d 335. The facts do not establish that plaintiff was negligent as a matter of law. It was for the jury to decide if plaintiff was negligent in not having seen defendant's car earlier than he did.

Plaintiff's instruction 6 submitted humanitarian negligence and defendant contends that it was erroneous because there was no evidence when plaintiff reached a position of peril, and therefore it cannot be determined whether defendant could have then taken action to avoid the collision. Defendant admits that "at some time plaintiff entered a position of imminent peril," but he contends that to determine that time the jury had to resort to surmise, speculation and guesswork.

Under the humanitarian doctrine, defendant was under no duty to take action to avoid a collision until plaintiff came into a position of imminent peril. Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33; Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228. The zone of peril of a person driving toward the path of a moving vehicle of which he is aware is narrower than the danger zone of an oblivious person approaching at the same speed, except where inability to control exists which would become apparent at the same distance at which obliviousness might be observed. Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300. When the approaching person is oblivious, the zone of peril commences and the duty of a driver of a moving motor vehicle begins when he saw, or could have seen by the exercise of the highest degree of care, that the person approaching the path of his vehicle was oblivious to the danger and was intent on continuing across his path. Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 547. However, plaintiff testified that he saw defendant's automobile, and a plaintiff may destroy a case of apparent obliviousness by testifying that he was not actually oblivious. Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321. When a person approaching the path of a moving vehicle is not oblivious and has the ability to stop, he is not in a position of imminent peril until he is so close to the path of the moving vehicle that he cannot stop short of that path. Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699. Defendant testified that he was one-fourth of the way across Highway 40 when he first saw plaintiff's truck as it "loomed" in front of him. At this point plaintiff was in a position of imminent peril because he was then actually in the path of defendant's car, and of course he could not then have stopped short of that path. We need not determine if the evidence established that he entered the zone of peril at any earlier time. There was evidence that the point of impact was six feet south of the center line of Highway 40. This would indicate that defendant's car was in the neighborhood of 11½ feet from plaintiff's truck when defendant first saw it. Defendant estimated his speed at not more than five and possibly as little as three miles per hour, and that his stopping distance would have been five to seven feet. He subsequently testified that in giving this estimate of stopping distance he did not consider reaction time. Taking the estimates of speed, location of the vehicles and stopping distance most favorable to plaintiff, and using these in relation to the time and place defendant actually discovered plaintiff in a position of imminent peril, it is evident that the jury could have found that by the exercise of the highest degree of care defendant could have avoided the collision by stopping, slackening the speed or changing the course of his automobile as submitted in the instruction.

Defendant next contends that all of the instructions of plaintiff on primary negligence were erroneous because they made no reference to defendant's instruction submitting his counterclaim on humanitarian negligence, and that the jury was instructed, in effect, that negligence on the part of defendant constituted a defense to his counterclaim. Defendant cites three cases which hold that contributory negligence is not a defense to humanitarian negligence or to the last clear chance doctrine, but none involves the situation where one party obtained instructions on primary negligence without making specific reference therein to a humanitarian submission of the other party.

■ It is true that plaintiff's instructions on primary negligence do not make specific reference to defendant's counterclaim based on humanitarian negligence, but in Hangge v. Umbright, Mo.Sup., 119 S.W.2d 382, 383, this court held that this was not necessary. See also Seiler v. W. H. Powell Lumber Company, Mo.App., 283 S.W.2d 929, 930. In Wabash Railroad Company v. Dannen Mills, Inc., Mo.App., 279 S.W.2d 50, in a situation somewhat similar to the present case, it was held that plaintiff's instruction on primary negligence was erroneous because it was in conflict with defendant's instructions on humanitarian negligence. The language of the instructions in that case when read together permitted the jury to find for the plaintiff on his instruction submitting primary negligence and also for the defendant on his instruction submitting humanitarian negligence. Mention was made in that opinion of at least three ways in which the conflict might have been eliminated by making reference in the primary negligence instruction to the humanitarian submission. On transfer to this court en banc the holding that the instructions were in conflict was approved. Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. ——, 288 S.W.2d 926. However, it is obvious from the language used in the opinions in the Dannen Mills case that the test is not the simple proposition of whether there was no reference made in plaintiff's instruction on

primary negligence to the defendant's humanitarian submission, but is whether the instructions by reason of the absence of such a reference are in conflict. Failure to make specific reference in the instructions on primary negligence to the defendant's humanitarian submission may or may not result in the instructions being in conflict depending on how the instructions are otherwise worded.

■ In determining the correctness of instructions, all of each instruction should be considered and parts should not be isolated from their context. All the instructions should be read as parts of a single charge. Sauer v. Winkler, Mo.Sup., 263 S.W.2d 370. When we examine plaintiff's instructions in this case submitting primary negligence we find that the jury was told that if it found that plaintiff in operating his automobile was exercising the highest degree of care, and if it also found that defendant was negligent in the respects hypothesized, and that the said negligence of defendant, if so found, was the direct cause of plaintiff's injuries and damage, then the verdict of the jury should be in favor of the plaintiff. In defendant's instruction submitting humanitarian negligence based on his counterclaim the jury was told that even if it found that defendant was negligent in any of the respects submitted in plaintiff's instructions on primary negligence, if it also found that defendant was in a position of imminent peril and that plaintiff, by the exercise of the highest degree of care, could have avoided said collision, but that plaintiff did not exercise the highest degree of care and was thereby negligent, then defendant should recover on his counterclaim. A finding for plaintiff based on his primary negligence instructions necessarily precluded a finding for defendant based on his instruction submitting humanitarian negligence, and vice versa. This is the distinguishing feature of the instructions in this case and those in the Dannen Mills case. When the instructions in this case are read together they are not in conflict nor are they confusing. They did not authorize contributory negligence on the part of defendant to

be considered as a defense to defendant's submission of humanitarian negligence. The express wording of defendant's instruction itself specifically precluded this.

 Defendant's next contention is that all of plaintiff's instructions were erroneous because they improperly assumed that plaintiff was the owner of the truck he was operating. Plaintiff testified that he had purchased the truck new and that he was the sole owner. There was no evidence to the contrary. The case was tried and submitted to the jury by both parties on the theory that plaintiff was the owner of the truck. Instructions should not assume controverted facts, George v. Allen, 362 Mo. 971, 245 S.W.2d 848, but there was no controversy in this case concerning the ownership of the truck, and it is not reversible error to assume in an instruction that which is conceded, undisputed or uncontradicted by the evidence. Morris v. Equitable Assur. Soc. of United States, 340 Mo. 709, 102 S.W.2d 569; Hill v. St. Louis Public Service Co., Mo.Sup., 64 S.W.2d 633.

What we have said previously disposes of the remaining two points, the first of which is that the trial court erred in refusing to strike out the testimony of the plaintiff that the defendant failed to stop before entering the intersection for the reason that "it was obvious from his testimony that plaintiff did not and could not know whether or not defendant did make such a stop." The second and last point is that the trial court erred in overruling defendant's motions for a directed verdict because "there was not sufficient evidence presented from which a jury could find a verdict for plaintiff on any theory of negligence pleaded."

The cause is remanded to the trial court with directions to set aside the order granting a new trial, to reinstate the verdict of the jury and to enter judgment thereon in plaintiff's favor in the amount of the verdict as of the date of its rendition.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.