## Otis et al., Appellants, *v.* Medoff.

Argued December 2, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph J. Brown,* with him *John Arthur Brown,* for appellants.—Plaintiffs were justified in believing that when defendant, without objection or protest of any kind, continued to employ them in connection with the two transactions in controversy, he did so with full knowledge of and assent to their reservation of the afore-

said right of rehypothecation: Green's Case, 11 F. (2d) 676; Smith v. Craig, 211 N. Y. 456; Firth & Foster Bros. v. Hamill, 167 Pa. 382; Wright v. Trainer, 1 W. N. C. 198; Kirkman v. Shawcross, 6 Term R. 14.

*Nathan J. Bonx*, for appellee, cited: Pearson v. Kurtz, 280 Pa. 34.

OPINION BY MR. JUSTICE DREW, January 16, 1933:

Plaintiffs are a firm of stockbrokers doing business as a partnership in the City of Philadelphia. Upon oral orders received from defendant, they purchased for him on the New York Stock Exchange 100 shares of the common stock of American & Foreign Power Company on October 15, 1929, and another 100 shares on October 16, 1929, and paid for them out of their own funds. On October 17th, plaintiffs sent defendant a letter, and two days later a telegram, requesting him to take delivery and make payment, or put up collateral to secure the account. He failed to do either, and on October 25th, plaintiffs, without consulting defendant, pledged this stock and other securities with a bank as collateral for a loan of $780,000 to themselves. They did not have in their possession any other American & Foreign Power Company stock. The pledge was a general one, and the bank was not bound to release the stock purchased for defendant on payment to it of the amount of defendant's indebtedness to plaintiffs. After each of these purchases, and on four other purchases made by plaintiffs for defendant a short time before, plaintiffs sent to defendant a written confirmation slip setting forth the transaction, at the bottom of which appeared in small type the following: "It is agreed between broker and customer: ......That all securities purchased or received for the customer's account and not paid for in full......may be pledged either separately or together with other securities, either for the sum due thereon, or for a greater sum, without retaining for delivery a like amount of similar

securities, all without further notice to the customer, and with his consent, which is hereby specifically given." By agreement, the case was heard by the court below without a jury. After finding the foregoing facts, the learned judge entered judgment in favor of defendant, on the ground that the hypothecation of the stock was a conversion which wiped out the entire claim. Plaintiffs appealed.

Appellants argue that there was an implied assent to the hypothecation, in that defendant had accepted the terms and conditions printed on the confirmation slips. This contention cannot be supported. The transactions were oral, and were complete upon oral offer and acceptance; hence the confirmations, sent after the transactions, were ineffective to change the terms and conditions of the contracts already completed before the sending of the confirmations. New terms could not be added without a new meeting of the minds and a new consideration: Pearson v. Kurtz, 280 Pa. 34. Appellants insist, however, that the confirmations sent at the completion of the four previous transactions entered into and became part of the transactions in controversy; that, in the absence of evidence to the contrary, there was a presumption that defendant read the printed terms and conditions thereof, and that under these circumstances plaintiffs were justified in believing that when defendant, without objection or protest, continued to employ them, he did so with full knowledge of and assent to their printed reservation of the right of hypothecation. With this we are unable to agree. The confirmation slips sent after the previous purchases, as well as those sent after the purchases now in controversy, related to past transactions when sent and received. Defendant was therefore under no duty to read them. Not only is there no direct evidence that he read the printed matter at any time, but under the circumstances of this case the probability is that he did not, and a presumption to the contrary would be wholly artificial. The court below

acted properly in finding that the hypothecation was unauthorized, and that there was a conversion of the stock bought for defendant: Sproul v. Sloan, 241 Pa. 284; Darr v. Fidelity Title & Trust Co., 243 Pa. 591; Sterling's Est., 254 Pa. 155.

The learned court went further, however, and held that the conversion constituted a complete defense to plaintiff's claim. This was done on the authority of Sproul v. Sloan, supra, where we held that a conversion by a broker of stock purchased for a customer was an absolute defense to an action by the broker to recover his advances for the stock and his commissions. This ruling was followed, without discussion, in Darr v. Fidelity Title & Trust Co., supra, Sterling's Est., supra, and Berberich's Est., 257 Pa. 181. It results in palpable injustice. It deprives the broker of all right to recover, even though the customer's loss may actually be only a fraction of the broker's claim. It is an exception to the general rule that the measure of damages for a wrong done is compensation for the loss sustained. There is no reason, in law or equity, why an exception should be made in this class of cases. A study of the instant case shows the hardship of the rule. The purchase price of this stock, including commissions, was $31,150. At the date of the conversion its value had declined to approximately $21,000, according to market quotations placed in evidence. The defendant then owed plaintiffs $31,150, and had owed that amount for ten days—since the date of the purchase. When the conversion took place defendant was deprived of stock actually worth $21,000, so that amount should be subtracted from the amount actually then due, $31,150, the result of which is a balance in favor of plaintiffs, at that time, of $10,150. If, then, the damages were determined at the time of conversion, instead of at the time of the highest market value before trial (as in Bank v. Reese, 26 Pa. 143; Learock v. Paxson, 208 Pa. 602; Berberich's Est., 264 Pa. 437) or at the time of the highest market value within a reasonable

time after notice of the conversion (as in Gervis v. Kay, 294 Pa. 518, and as is now the rule under the Act of April 10, 1929, P. L. 476), this defendant would be compensated in full and still owe a balance of $10,150 to plaintiffs. It is quite possible that the stock had a greater market value at the time of the conversion than at any time since, and if such is true—and that can only be determined by a further hearing in the court below—the difference between its then value and its cost price and commissions, about $10,000, results in favor of plaintiffs. If in any event, after deducting defendant's damages, there is a balance in plaintiffs' favor, there can be no sound reason why they should not be permitted to recover that balance.

The reasoning upon which our decision in the Sproul case was based was that the broker had committed a breach of the contract, and therefore should not be permitted to recover anything in a suit upon it. This argument is fallacious. A broker's claim arises when he purchases stock for a customer and advances the purchase price. Immediately upon the purchase, the stock becomes the customer's property, but it remains in the broker's possession as security for the advances and commissions. The relation between the parties is that of pledgor and pledgee: Learock v. Paxson, supra; Barbour v. Sproul, 239 Pa. 171. If the broker makes a wrongful repledge of the stock, it is undeniably a conversion, for which he is answerable in damages, but it is not a breach of the contract to advance the price and purchase the stock, which is the foundation of the customer's indebtedness. It is at most only a breach of his duty as pledgee. This breach can be fully compensated for by an offset of the customer's damages for the conversion against the broker's claim.

The settled rule in New York is that a broker's claim for the recovery of a customer's indebtedness is not extinguished by a conversion of the customer's securities; the conversion merely entitles the customer to offset his

damages against his indebtedness to the broker: Gruman v. Smith, 81 N. Y. 25; Capron v. Thompson, 86 N. Y. 418; Minor v. Beveridge, 141 N. Y. 399. See Meyer, Stockbrokers and Stock Exchanges, sections 132, 141. Gruman v. Smith, supra, was a case of sale without notice. In holding that this conversion was not a complete bar to the action, but merely the subject of a counterclaim, the Court of Appeals stated: "The learned court below erred, we think, in holding that a sale of the stock ......without notice, although irregular, and technically amounting to a conversion, operated as matter of law as an extinguishment of the entire claim of the plaintiff, and debarred him from maintaining an action thereon. The relation of the parties was that of pledgor and pledgee. ...... For a conversion of the pledge, the pledgee was liable for the damages sustained by the defendant, but whether they would equal the amount of the claim would depend upon the facts developed. ...... The action was not based upon the wrongful sale, but upon the debt for the advance made by the brokers to purchase the stock. ...... The defendant was not bound by this sale for want of notice, and might insist upon full indemnity for his loss or injury, but such loss was not necessarily the whole amount of the plaintiff's claim." The facts of Capron v. Thompson, supra, were very similar to those of the instant case. It was there held that a rehypothecation by the broker was not a failure to perform a condition precedent to his right of action for his advances and commissions, and did not extinguish his claim therefor, but merely gave to the customer a right of recoupment or counterclaim. In Minor v. Beveridge, supra, a case of sale without notice, it was stated as the settled law of New York that a conversion by a broker does not as a matter of law extinguish his claim against the customer, but the customer is only entitled to an offset of his damages against the broker's claim.

We think the New York rule does exact justice between the parties, and we are disposed to make it our own, overruling Sproul v. Sloan, supra, Darr v. Fidelity Title & Trust Co., supra, Sterling's Est., supra, and Berberich's Est., 257 Pa. 181, so far, but only so far, as they hold that a conversion by the broker operates as a matter of law as an extinguishment of the entire indebtedness of the customer.

From what has been said, it is apparent that the judgment of the court below must be reversed. Our action is no reflection on that learned court, which found itself bound by our previous holding. We return the case for further hearing to ascertain the amount of damages, so that it may be disposed of in accordance with the views herein expressed.

Judgment reversed with a procedendo.