## Forsythe v. Commonwealth Trust Company

*Hause, Evans, Storey & Lick*, for plaintiff.
*Stroh & McCarrell*, for defendant.

HARGEST, P. J., May 27, 1935.—This case comes before the chancellor on bill, answer and testimony taken.

### Abstract of pleadings

The bill avers that the plaintiff, a resident of the City of Harrisburg, was a depositor with the defendant, a corporation engaged in the business of receiving money on deposit and loaning money, and had two accounts under the name of "J. A. Forsythe, Jr." and "J. A. Forsythe, Jr., District Manager," both belonging to the plaintiff only and subject only to his withdrawal, and both payable on demand. The plaintiff on February 24, 1932, had borrowed $4,000 upon a note payable on demand and secured by collateral. At the request of the defendant, the plaintiff, on July 1, 1932, gave a new demand note for $3,000, secured by all of the collateral, and a straight demand note for $1,000 without collateral. The demand collateral note provided that said collateral was security for the payment of any other indebtedness of the plaintiff to defendant. On August 15, 1932, without knowledge of the plaintiff, defendant pledged the two notes, along with the collateral and other similar notes and assets, to the Reconstruction Finance Corporation, as collateral security for a large loan. On March 4, 1933, the defendant went upon a "restricted basis". The defendant, while keeping open for business, refused to permit the plaintiff and other similar depositors to withdraw their deposits which stood to their credit on that day. On May 4, 1933, certain col-

lateral was sold with the consent of the plaintiff, and payments were made on account of the $3,000 note, leaving a balance thereon of $1,033.04. On May 27, 1933, the plaintiff authorized the defendant to sell 100 shares of the common stock of the United Air & Transport Company and apply the same as follows: $1,033.04 to the payment of the balance due on the collateral demand note and $378 to the payment of the amount due on the straight demand note, leaving $622 due on said note which was to be offset by the amount of $622 which the plaintiff then had on deposit in the two accounts above referred to on the "restricted basis." The said collateral was sold for $3,050.79, and without the consent of the plaintiff the proceeds were applied as follows: payment of balance on said collateral note $1,033.04; interest thereon $6.51; payment in full of said straight note $1,000; interest thereon $5.67; total $2,045.22, leaving a balance of $1,005.57 which defendant deposited to the plaintiff's unrestricted deposit account which had been opened subsequently to February 27, 1933. Defendant also returned to plaintiff the balance of the collateral deposited. Defendant paid $2,045.22 to the Reconstruction Finance Corporation as part payment of its indebtedness to the said corporation. Defendant, by violating the plaintiff's written instructions and refusing to give the plaintiff credit for the $622 which he had on deposit, was guilty of a conversion, and defendant was a trustee ex maleficio of the property which came into its hands by the wrongful use of the $622. Defendant advised the plaintiff that it intends to liquidate its affairs and proposes to pay the plaintiff in cash only 20 percent of said $622, to use 15 percent of said sum for the purchase of stock in a new bank and trust company for the account of the plaintiff, and to issue to plaintiff a certificate of participation in a trust fund of a portion of its assets to the extent of 65 percent of said $622. The plaintiff prays for an injunction to restrain defendant from making use of the $622 in the way averred and a mandatory injunction imposing upon

said assets a trust in favor of the plaintiff to the extent of $622.

The answer admits practically all of the facts averred, and in addition thereto avers that defendant accepted the provisions of the Act of March 8, 1933, P. L. 9, authorizing the Secretary of Banking to take over any bank or trust company upon a restricted basis. It avers that the Reconstruction Finance Corporation and not the defendant owned the note and collateral of the plaintiff, and that the defendant did not have the power to carry out plaintiff's instructions contained in the letter of May 27, 1933, and was prohibited from so doing by the Secretary of Banking, and that at the time of the sale of the securities the plaintiff did not owe the defendant the sum of $2,-033.04 represented by the two notes in question, but the plaintiff owed that money to the Reconstruction Finance Corporation.

Inasmuch as there is no dispute of fact, we think it is unnecessary separately to find the facts. The only question raised is a question of law.

### Discussion

There is no question of the right of the Commonwealth Trust Company to pledge the note with the collateral which the plaintiff had given to it: Section 36 of the Act of June 15, 1923, P. L. 809, as amended by the Act of June 12, 1931, P. L. 563; Sproul v. Sloan, 241 Pa. 284; Otis et al. v. Medoff, 311 Pa. 62.

In repledging collateral, however, the Commonwealth Trust Company did not sell either it or the note of the plaintiff to the Reconstruction Finance Corporation. So far as the evidence shows, the transaction was a pledge and it is governed by the general principles of law relating to pledges of this character, which reserved to the Commonwealth Trust Company and to the original pledgor any equities which there might be in the collateral.

The question, therefore, is whether or not the defendant was obliged to credit the plaintiff's note with the de-

posit of $622.54, which is the exact amount which it had held on a restricted basis. If it had credited this amount to the plaintiff it would have passed $1,628.11 to his unrestricted balance, instead of $1,005.57 which it did so pass. It did not credit it, and the defendant is in the position of taking part of the $622.54 and paying it to other depositors, because it must be assumed that the defendant is paying all the cash to its depositors that the liquidation of its affairs permits, and it proposes to pay only 20 percent in cash to the plaintiff; to use 15 percent to purchase stock for him in a new trust company and give him a certificate of participation in a trust fund to be realized from the assets of the defendant to the extent of 65 percent of his deposit. While it does not appear in evidence, this court knows that, in the liquidation of the insolvent banking institutions, if the plaintiff's note had not been pledged his balance of $622.54 could have been used to pay off the indebtedness upon paying the balance of it. Should he be penalized because the defendant for its own purposes pledged his note and collateral without notice to him and thereby put him in a worse position than he otherwise was in through no action of his own? We think not. Equality is equity.

The right of the plaintiff, being a depositor on a restricted basis, is, in our opinion, the same as if the Secretary of Banking had taken over the Commonwealth Trust Company for the purpose of liquidation. There was a voluntary liquidation, and so far as the plaintiff is concerned his rights are the same as if it were involuntary. We think that even though the Secretary of Banking did not take over the defendant and liquidate its assets it must be regarded as technically insolvent: Commonwealth, ex rel., v. United States Fidelity & Guaranty Co., 314 Pa. 140.

We are of the opinion, therefore, that the case of In re Hamilton Trust Company, 17 D. & C. 633, directly applies to the instant case, and we adopt the conclusions reached by Judge Stern in that case. The facts are ex-

actly similar except that the Hamilton Trust Company was taken over by the Secretary of Banking for liquidation. In that case Judge Stern, relying on the case of Becker v. Seymour et al., 71 Minn. 394, said:

"The opinion further points out that persons in the position of the present claimants might have maintained an action against the pledgee to compel it to exhaust other collaterals first and thus preserve their rights of set-off; furthermore, that the result of the claimants paying their notes in full instead of merely the excess over the amounts of their deposits was to increase the fund in the hands of the receiver arising from the returned collaterals by a sum to which neither the receiver nor the general creditors have any equitable claim. The court said that accordingly, in its last analysis, the case was simply one where the receiver had obtained, not from the assets of the insolvent company but from the claimants, through and by the act of the pledgee, a sum of money which did not equitably belong to the other creditors, and that if the receiver were required to repay this sum to the claimants a wrong would be righted and no injustice done to others. Accordingly, the court directed the receiver to repay from the funds in his hands arising from the return collaterals the amount by which that fund had been increased by reason of the payment of the note in full instead of the excess of the amount of the note over the deposit balance of the maker."

We are of opinion, therefore, that this bill must be sustained and the injunction prayed for issued.

And now, May 27, 1935, the prothonotary is hereby directed to enter the following decree, nisi.

It is hereby adjudged and decreed that the defendant, the Commonwealth Trust Company, is now holding $622.54 belonging to the plaintiff impressed with a trust in favor of the plaintiff, and said defendant company is hereby enjoined and restrained from making any use of the said sum, and is directed to transfer upon its books

the said sum from the restricted deposit account to the unrestricted deposit account of the plaintiff. The costs of this suit to be paid by the defendant.