## LELEUX v. SERAFINO.
### No. 2845.

Court of Civil Appeals of Texas. Beaumont.
Nov. 27, 1935.

Rehearing Denied Jan. 8, 1936.

Nola White, of Beaumont, for appellant.

Howell & Howell, of Beaumont, for appellee.

O'QUINN, Justice.

Appellant sued appellee in the county court at law of Jefferson county to recover on a promissory note in the sum of $350, bearing 8 per cent. interest, and providing that if collected by legal proceedings 10 per cent. additional should be paid as collection fees. The note was payable to appellant on demand. At the time of the execution of the note, appellee executed a pledge agreement and mortgage on a certain diamond ring to secure the payment of the note. The pledged ring was delivered to appellant, which ever since has remained and now is in the possession of appellant.

Appellant further alleged that about February 16, 1932 (which was prior to the execution of the note sued on and the delivery of the ring as a pledge to secure its payment), appellee borrowed $50 from the Texas National Bank of Beaumont, payable 90 days after date, bearing 10 per cent. interest from maturity, and "induced" appellant to sign said note as surety, which note was not paid when due, and that unless appellee pays said note that he, appellant, will have to pay same. That the pledge note contains the following: "Now in the event of the non-payment of this note at maturity the holders hereof are hereby invested with full authority to use, transfer, hypothecate, sell or convey the said property or any part thereof, or cause the same to be done at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the holders may deem best; and the holders of this note are authorized to purchase said collaterals when sold for their own protection, and the proceeds of such sale, hypothecation or transfer shall be applied to the payment of this

note, together with all protests, damages, interest, costs and charges due upon this note, or incurred by reason of its non-payment when due, or in the execution of this power; also a commission of 2¼% on the gross amount of said collaterals sold. The surplus, if any after payment of this note together with all charges above stated, shall be paid to the drawer of this note, or at the election of the holders hereof, be paid on any other obligation of the drawer hereof, whether as principal debtor or otherwise, held by the holders hereof, whether due or not. The collateral above described may also be held and applied by the owner hereof for the security of the payment of any other obligation of the maker hereof, whether direct or otherwise, held by the owner hereof."

And "that availing himself of the powers conferred upon him by the terms of said note, he elects to hold and apply the said pledged diamond ring, and its proceeds, as security for the payment of the said $50.00 note, hereinabove described, defaulted upon by the defendant, which in principal, interest and attorney's fees now amounts to almost the appraised value of said ring; and in the event said pledged ring should sell for more than sufficient to pay said note according to its full tenor and terms, petitioner is willing to give credit to the defendant for such amount on the note herein sued on," and prayed for judgment on the $350 note.

Defendant answered by general demurrer, general denial, and specially that appellant did not have or hold any obligation against him because of the $50 Texas National Bank note for in that appellant had not paid said note, nor was appellant under any present obligation to pay same, and so not entitled to any recovery against him for same, or to hold the pledged ring as security for the payment of same. He further specially answered that the $350 note sued on was a demand note, and that within about 60 days after the execution of said note appellant demanded payment of same, and he, appellee, not being able to pay same, then and there requested appellant to avail himself of the security he held for the payment of said note, and though he had possession of the pledged ring, which had a then value of approximately $400, appellant failed and refused to sell same, or to permit appellee to do so, but re-tained possession of said ring and converted same to his own use and benefit and arbitrarily fixed the value of same without availing himself of his right to dispose of same at a price fair to both parties, and was therefore estopped from seeking further judgment against appellee.

By way of cross-action, appellee alleged that at the time he executed the note sued on he pledged a diamond ring worth approximately $400 and delivered same to appellant to secure the payment of the note; that approximately 60 days from the date of the execution of the note, same being payable on demand, appellant demanded payment of the note, and that not being able to pay the note, he requested appellant to sell said ring and to discharge the obligation, which appellant refused to do, but converted said ring to his own use, and further alleged that said ring could have been sold at said time for the sum of $500, which would have paid the note and left approximately the sum of $100 for appellee, for which sum he sued and prayed judgment.

To this cross-action appellant replied, admitting all the material allegations in the cross-petition other than the value of the pledged ring, which he averred was not $400 at the time same was pledged or at any other time which was well known to appellee; that when appellee requested him to sell the ring that he, appellant, took the ring to competent "jewelers in the city for appraisal and was informed by them that the ring was worth nothing like the amount he had advanced thereon" and that if sold at auction or at private sale it "would hardly bring the sum of $100.00"; and that he so informed appellee and again demanded payment of the note, or additional security, which was refused, and he was forced to bring this suit.

The case was tried to a jury, but when appellant, plaintiff below, concluded his evidence, he took a nonsuit, for the reason, he says, that he was unable to establish the value of the ring. The defendant, appellee here, then prosecuted his cross-action. The court instructed the jury to return a verdict in favor of the plaintiff in the cross-action, appellee, and against the cross-defendant, appellant, canceling the note sued on, which verdict was so returned, and judgment accord-

ingly entered, from which judgment this appeal is prosecuted.

The judgment will have to be reversed. There is no authority, in a suit of this character, for a cancellation of the note made the basis of the suit. The appellee pleaded and insists that the act of appellant in converting the pledged property, the ring, to his own use was to satisfy the indebtedness for which the pledge was given as security for its payment, and therefore the debt was discharged. Several authorities are cited as sustaining this proposition. We do not believe any of them are in point. The case of Farmers' Nat. Bank v. Cravens, 93 Okl. 58, 219 P. 138, appears to support appellant's contention, but in third section of the syllabus it says: "A pledgee who sells the property of an estate of a decedent, held as collateral to secure the payment of indebtedness against the estate, on credit, and fails to collect the purchase price, cannot collect his debt from the estate, *or so much thereof as is equal to the reasonable value of the property sold."* (Italics ours.) We have italicized the above to direct attention to the holding that so much of the value of the pledged property as was negligently lost by the pledgee cannot be collected on the original debt. It is not a holding that the negligent loss of or conversion of the pledged property by the pledgee ipso facto cancels the debt regardless of the difference in value of the property pledged, and the amount of the debt.

The cited case refers to 31 Cyc. 869, Title Pledges, as showing the rule. But when we refer to the subsequent publishing of the identical matter in 49 C.J., § 133, p. 957, and § 231, pp. 990, 991, no such rule is stated, but, to the contrary, the well-settled rule as to the remedies of pledgor as against the pledgee as hereinafter discussed.

■ The case of Slyman v. Simon, 226 Mo.App. 1000, 48 S.W.(2d) 140 (writ denied), by the Missouri Court of Appeals, does not support appellant's contention. It holds: "Pledgee's conversion of collateral constitutes discharge of secured debt *to extent of value of property converted."* This is in consonance with the well-established rule that the value of the converted pledged property may be set off against the debt.

The case of Skud v. Tillinghast (C.C.A.) 195 F. 1, holds: "A pledgee who converts the pledge thereby in effect to the extent of its value discharges the debt, and the same result follows where the pledgee through his fault fails to preserve the pledge." This is but a statement of the rule that the value of the converted or lost pledge may be set off against the debt.

■ The facts are without dispute other than as to the value of the ring pledged. We think that when appellant demanded payment of the note, and appellee failed to pay, that appellant could not then "elect," as he says, to hold the ring as security against another note owed by appellee and on which appellant was endorser to protect himself against liability on the endorsed note. The ring was pledged to secure the note to appellant for $350, and for no other purpose. It is well settled that a pledge, or collateral, cannot be held or used as a security for any debt or purpose other than the specified obligation in the agreement wherein the secured debt is contracted. 33 Tex.Jur., p. 869, § 8. And, too, the $50 note which appellant had indorsed had not been paid and so to that date appellant had no demand against appellee as to that note.

■ When appellant demanded payment by appellee of the $350 note to secure which the ring had been pledged, and payment was not made, but request of appellant who had possession of the pledged ring, was made to dispose of the ring and apply the proceeds to the payment of the note, and appellant failed and refused, as he admits, to do so, but "elected" to hold the ring as security against the possibility of his having to pay the $50 note which he had indorsed for appellee, and then brought suit against appellee for judgment on the $350 note, he was guilty of conversion of the ring, and was liable to appellee for its value as of the date of its conversion. It is the rule in all jurisdictions that when the pledged property has been converted by the pledgee, the pledgor may avail himself of several remedies, at his election: (a) An action to recover the pledged property itself; (b) an action to recover its proceeds in case it has been sold; (c) an action for damages. 33 Tex.Jur., § 18, p. 702; 21 R.C.L., Pledges, §§ 38–40, pp. 676, 677, 678, 679; Otis v. Medoff, 311 Pa. 62, 166 A. 245, 87 A.L.R. 582, Annotation 586, 587. Moreover, a conversion having taken place, the pledgor is

not bound to receive back the property in the event that it is tendered him by the pledgee; nor is the tender a defense to the pledgor's action to recover damages for the conversion. King v. Boerne State Bank (Tex.Civ.App.) 159 S.W. 433 (writ refused).

▮ It might be contended that appellee's cross-action was in the nature of a set-off against the suit on the note, because he alleged in his cross-petition that at the time he requested appellant to dispose of the pledge the ring was worth enough to pay the note, and to leave an excess of approximately $100, for which he prayed judgment. If considered in this light, then it would not authorize judgment denying cross-plaintiff any recovery and awarding cancellation of the note, for the value of the ring as of the date of the request for its sale would have to be shown, which was not done. It is true that the court in its judgment found "that on the date demand for payment of the note was made that the reasonable cash market value of the ring was more than three hundred and fifty dollars." We have carefully searched the record and have failed to find any proof of the value of the ring at any time. The appellant, plaintiff below, took a nonsuit because he was unable to make proof of its value. The appellee offered no witness to prove its value. He relies entirely upon a statement of appellant that appellee, in negotiating the loan, told him that the ring was worth $800. This statement occurred in this way. He was put on the stand by the defendant, appellee, and asked:

"Q. You hypothecated the ring to the bank to secure a $50.00 note down there, did you? A. No.

"Q. Did you pledge this ring to the bank, First National Bank to secure that $50.00 note? A. If I pledge it myself?

"Q. Yes, did you take it down to the bank and leave it there to secure that note? A. No, I didn't.

"Q. You didn't do that? A. No.

"Q. What was the ring doing at the bank? A. Because Mr. Serafino told me the ring was worth $800.00 and for his own benefit I didn't want to carry a ring around with me that was so valuable; after I loaned him the $350.00 and he told me it was worth $800.00 I was afraid to carry the ring with me."

It is insisted that this was an admission against the interest of appellant, and constituted proof of the value of the ring. We do not think so. It was not an answer as to what was the value of the ring, not an estimate of its value by the witness, but simply a statement made in explanation of why the ring was placed in the bank, which was because of a statement made as to the value of the ring by appellee to him. We do not believe that this statement in any sense could be considered evidence as to the value of the ring. The value of the ring, in any manner of suit, either as to damages for conversion, or as a set-off against the debt it was pledged to secure, was a question of fact, and for the jury. The court could not take the case from the jury and himself find the value.

From what we have said, it follows that the judgment must be reversed, and the cause remanded for a new trial, and it is so ordered. Reversed and remanded.